Matthew LONG, Petitioner,

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; Seatrain Lines; and Royal Globe Insurance Company, Respondents.**

No. 84-7370.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 1985.

Decided Aug. 9, 1985.

Matthew Fishgold, San Francisco, Cal., for petitioner.

Richard C. Kelley, Hanna, Brophy, MacLean, McAleer & Jensen, San Francisco, Cal., for respondents.

Before KENNEDY, ALARCON, and NELSON, Circuit Judges.

ALARCON, Circuit Judge:

Matthew Long appeals from the decision of the Benefits Review Board (Board) which affirmed the order of the Administrative Law Judge (ALJ) denying his claim for worker's compensation benefits under section 8(c)(2) and section 8(c)(19) of the Longshoremen and Harbor Worker's Compensation Act (LHWCA), 33 U.S.C. §§ 908(c)(2), (19) (1982).[1]

## I

### FACTUAL BACKGROUND

On October 24, 1973, Long sustained an injury to his back while working for his employer, Seatrain Lines. The injury was diagnosed by his treating physician as a low back strain, acute with sciatic irritation. He aggravated his back condition at work on two subsequent occasions. On August 22, 1975, he experienced acute low back pain extending into his left leg while bending over to pick up an alternator. On April 29, 1976, he experienced left low back

---

1. The LHWCA was amended on September 28, 1984. *See* Longshore and Harbor Workers' Compensation Act Amendments of 1984, 98 Stat. 1639. Although section 28 of the amendments provides that the amendments apply to claims pending on the date of enactment, the revisions do not substantively alter our analysis in this case.

pain as he arose from a desk. As a result of this incident, Long experienced a numbness in his left leg and foot.

Long filed a claim for worker's compensation benefits based on the condition of his left leg under 33 U.S.C. §§ 908(c)(2) and 908(c)(19) and for the disability resulting from the back injury under section 908(c)(21). The ALJ denied Long's claim for compensation under sections 908(c)(2) and 908(c)(19). The Board affirmed, holding that sections 908(c)(2) and 908(c)(19) do not apply "where claimant's actual injury is not to a part of the body listed therein, even if one effect of the injury is disability to a scheduled part of the body."

## II

### ISSUE ON APPEAL

Long contends that he is entitled to an award under sections 908(c)(2) and 908(c)(19) for the partial loss of the use of his leg which resulted from the injury to his back. He argues that the evidence is uncontradicted that his "back injury had far reaching consequences extending to the use of his leg."

He also asserts that:

[t]he fact that appellant's restricted use of his left leg stems from an injury to another part of his body (i.e., his back) does not in any way distract from the truth that *appellant cannot now use his leg in a manner such as he could have had the accident never occurred.*

(emphasis in the original text).

We must decide whether a claimant may receive benefits under section 908(c)(2) and section 908(c)(19) because of an impairment to his leg where the actual injury was to his back.

## III

### STANDARD OF REVIEW

■ The Board must accept the ALJ's factual findings if they are supported by substantial evidence. 33 U.S.C. § 921(b)(3). We must review the Board's decisions for errors of law and for adherence to the statutory standard governing the review of an ALJ's factual determinations. *Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs,* 629 F.2d 1327, 1329 (9th Cir.1980). Because the Board is not a policymaking agency, its interpretation of the LHWCA is not entitled to any special deference from the courts. *Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs, United States Department of Labor,* 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980). This court has noted, however, that it will respect the Board's interpretation of the statute "where that interpretation is reasonable and reflects the policy underlying the statute." *National Steel and Shipbuilding Co. v. United States Department of Labor,* 606 F.2d 875, 880 (9th Cir.1979).

## IV

### DISCUSSION

The LHWCA provides that compensation shall be payable "in respect of disability" which "results from an injury" to a person covered by the statute. 33 U.S.C. § 903(a).

The term "injury" is defined in the LHWCA as an "accidental injury ... arising out of and in the course of employment...." 33 U.S.C. § 902(2). The term "disability" is defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C. § 902(10).

Under the facts before us, Long, an employee covered by the LHWCA, suffered an accidental injury to his back while working. Thus, he was entitled to compensation.

The LHWCA provides that compensation for an incapacity to earn wages shall be payable pursuant to a fixed schedule for the total or partial loss of a member of the body or the use thereof. 33 U.S.C. § 908(c)(1)–(19).

A back injury is not explicitly included in the scheduled injuries listed in section

8(c)(1)–(20), 33 U.S.C. § 908(c)(1)–(20). Here, because the accidental injury was to the back, the ALJ was limited to an award under section 8(c)(21), 33 U.S.C. § 908(c)(21).

Under section 908(c)(21), if the loss of earnings is not due to an accidental injury to a member of the body itemized in section 908(c)(1)–(19), or does not result in disfigurement of the face, head, or neck or exposed parts of the body, compensation for the loss of earnings "shall be 66⅔ per centum of the difference between the average weekly wages of the employee and the employee's wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability." Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub.L. No. 98–426, § 8(c)(21), 98 Stat. 1639, 1645, 33 U.S.C. § 908(21). Here, the ALJ found that Long was 10% disabled under 33 U.S.C. § 908(c)(21) and that any radiation of pain to Long's leg was the result of his back injury and was encompassed in the 10% disability.

■ Long correctly observes that loss of earnings resulting from an accidental injury to a member of the body cannot be compensated for under 33 U.S.C. § 908(c)(21). In *Potomac Electric Power Co. v. Director, Office of Worker's Compensation Programs, United States Department of Labor*, the Supreme Court stated:

> [C]ompensation for a permanent partial disability must be determined in one of two ways. First, if the *injury* is of a kind specifically identified in the schedule set forth in §§ 8(c)(1)–(20) of the Act, 33 U.S.C. §§ 908(c)(1)–(20), the injured employee is entitled to receive two-thirds of his average weekly wages for a specified number of weeks, regardless of whether his earning capacity has actually been impaired. Second, in all other cases, § 8(c)(21), 33 U.S.C. § 908(c)(21), authorizes compensation equal to two-thirds of the difference between the employee's preinjury average weekly wages

and his post-injury wage-earning capacity during the period of his disability. 449 U.S. 268, 269–70, 101 S.Ct. 509, 510 (1980) (emphasis added) (footnoted omitted).

In *Potomac*, as a result of an injury to his knee, the claimant suffered a permanent partial loss of the use of his leg. *Id.* at 271, 101 S.Ct. at 511. The ALJ awarded the claimant the compensation available for "all other cases" instead of the lesser scheduled amount for a partial loss of the use of a leg. *Id.* at 272, 101 S.Ct. at 511. The Court held that "the character of the disability determines the method of compensation." *Id.* at 273, 101 S.Ct. at 512.

■ We have not been referred to any decision of a federal appellate court that has considered whether a claimant can recover compensation for impairment of a member that was not accidentally injured. Nor have we found anything in the legislative history of the Act which considers this question. In *Potomac*, the Supreme Court noted that when the LHWCA was enacted in 1927, it was "patterned" after a similar "scheduled benefits" provision in the New York Workmen's Compensation Law. *Id.* at 275, 101 S.Ct. at 513. Thus, the legislative history and judicial interpretation of the New York act are relevant in interpreting the federal statute. *Id.* at 275–76, 101 S.Ct. at 513. "[I]t may fairly be presumed that Congress was aware of the construction ... of the New York law" when it drafted the LHWCA. *Rupert v. Todd Shipyards Corp.*, 239 F.2d 273, 276 (9th Cir.1956) (per curiam). Furthermore, "when a legislature borrows an already judicially interpreted phrase from an old statute to use it in a new statute, it is presumed that the legislature intends to adopt not merely the old phrase but the judicial construction of that phrase." *Fusco v. Perini North River Associates*, 601 F.2d 659, 664 (2d Cir.1979), *vacated on other grounds*, 444 U.S. 1028, 100 S.Ct. 697, 62 L.Ed.2d 664 (1980); *see also Burnet v. Harmel*, 287 U.S. 103, 108, 53 S.Ct. 74, 76, 77 L.Ed. 199 (1932). In 1927, when the LHWCA was enacted, the New York stat-

ute had been interpreted to preclude recovery of benefits under the schedule for the impairment to the claimant's arms caused by a physical injury to the back of his neck. *Knight v. Ferguson*, 198 A.D. 756, 190 N.Y.S. 659 (1921). Therefore, Congress may be presumed to have intended to adopt the same construction when it enacted the LHWCA.

■ The failure to allow recovery under the fixed schedule for accidental injury to limbs comports with recent cases, which, without discussion, have awarded benefits under § 908(c)(21) for impairments to limbs caused by an accidental injury to a part of the body not specified in the schedule. *See Todd Shipyards Corp. v. Allan*, 666 F.2d 399, 402 (9th Cir.) (injury to neck and shoulder, 25% loss of function in each arm), *cert. denied*, 459 U.S. 1034, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982); *Hole v. Miami Shipyards Corp.*, 640 F.2d 769, 772–73 (5th Cir.1981) (injury to back resulting in leg pain).

The construction we have placed on the statute fully comports with congressional intent. The purpose of the statute is to compensate for lost wage-earning capacity. "Schedules are set up not to put a 'price' on certain parts of the human body, but to ameliorate an otherwise intolerable administrative burden by providing a certain and easily applied method of determining the effect on wage-earning capacity of typical and classifiable injuries." *Rupert v. Todd Shipyards Corp.*, 239 F.2d at 275–76 (*citing Iacone v. Cardillo*, 208 F.2d 696, 699–700 (2d Cir.1953)). However, it is not necessary to compensate Long under the schedule for reasons of efficiency, when the issue of wage-earning capacity has already been the subject of administrative scrutiny pursuant to section 908(c)(21).

## V

### WAGE–EARNING CAPACITY

Since his injury, Long has been promoted twice and now earns more than he did at the time of his injury. His disability, however, makes it unlikely that he will ever be able to work at his previous job should he lose his supervisory position. The ALJ found that Long's current earnings fairly and reasonably represent his wage-earning capacity and accordingly found that Long had suffered no loss of wage-earning capacity.

■ Under 33 U.S.C. § 908(h), a claimant's wage-earning capacity is determined by his or her actual earnings if such actual earnings fairly and reasonably represent the claimant's wage-earning capacity. If the actual earnings do not fairly and reasonably represent the claimant's wage-earning capacity, the ALJ may fix a reasonable amount as the wage-earning capacity. 33 U.S.C. § 908(h). "Higher post-injury wages do not preclude compensation if the claimant actually suffered a loss of wage-earning capacity." *Todd Shipyards Corp. v. Allan*, 666 F.2d at 402. An ALJ's findings on wage-earning capacity may be overturned only if unsupported by substantial evidence. *Portland Stevedoring Co. v. Johnson*, 442 F.2d 411, 412 (9th Cir.1971) (per curiam); 33 U.S.C. § 921(b)(3).

The statute provides no factors for determining whether actual post-injury earnings reasonably and fairly represent the claimant's wage-earning capacity. *Lumber Mutual Casualty Ins. Co. v. O'Keeffe*, 217 F.2d 720, 723 (2d Cir.1954). The objective is to determine the wage that would have been paid in the open market under normal employment conditions to the claimant as injured. 2 Larson, Workman's Compensation § 57.21, at 10–101–02 (1983); *see also Todd Shipyards Corp. v. Allan*, 666 F.2d at 402. A general increase in wages, longer hours, and an employer's sympathy may make post-injury earnings an unreliable indicator of wage-earning capacity. 2 Larson, Workmen's Compensation § 57.21, at 10–100 (1983). Further, if the post-injury work is continuous and stable, the post-injury earnings are more likely to reasonably and fairly represent a claimant's wage-earning capacity. *Cf. Todd Shipyards Corp. v. Allan*, 666 F.2d at 402 (shipbuilding industry is often cyclical and thus employee's post-injury earnings may not accu-

rately represent future effects of disability on wage-earning capacity).

■ The ALJ's finding that Long's post-injury earnings are representative of his wage-earning capacity is supported by substantial evidence. Within two years after his injury, Long was twice promoted and has held his current position of shop foreman since 1975. His supervisor testified that there is no reason to anticipate termination of Long's employment. Although there was evidence that some refrigeration mechanics outside of Long's current place of employment earn more than Long, mechanics at Seatrain Lines earn less than Long. Long has not established that but for his injury he could have obtained a position as a refrigeration mechanic at higher wages. The ALJ did not err in giving this evidence little weight and finding that Long's current wages reasonably and fairly represent his wage-earning capacity.

## VI

### DUE PROCESS

At the end of the hearing, the ALJ stated that the parties could submit additional information on the wage-earning capacity issue within 30 days and that if necessary they would then have another hearing. Seatrain Lines submitted an affidavit from Long's supervisor detailing the wages paid mechanics. By letter, Long objected to the admission of the affidavit on the grounds that it was hearsay and argumentative and moved to strike the affidavit. He did not request reopening of the hearing for cross-examination. The ALJ denied the motion to strike.

■ Long contends that the admission of the affidavit violated his right to procedural due process because he was not allowed to cross-examine the affiant. We cannot consider Long's contentions, however, because he failed to object on this ground in the proceedings before the ALJ. Assertion of error for the first time on appeal will not be entertained because the error, if any, might have been avoided if the issue was raised before the ALJ. *Westinghouse Electric Corp. v. Weigel,* 426 F.2d 1356, 1357 (9th Cir.1970) (per curiam).

### CONCLUSION

An employee who suffers an accidental injury to his back, in the course of employment may not receive an award of benefits under section 8(c)(2) and section 8(c)(19) of the Longshoremen and Harbor Worker's Compensation Act for the partial loss of the use of his leg. Those sections do not apply, notwithstanding the fact that as a direct result of the injury to an unscheduled portion of the body, use of a leg has been impaired.

Where, as here, substantial evidence supports the ALJ's finding that an employee's post-injury earnings reasonably and fairly represent his wage-earning capacity, we will not disturb a finding that he suffered no loss of wage-earning capacity. We decline to reach a claim of the denial of the right to cross-examine a person whose affidavit was introduced by the other side because it was not raised at a time when the error, if any, could have been cured.

AFFIRMED.