CONTAINER STEVEDORING
COMPANY, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS
COMPENSATION PROGRAMS;
Albert Gross, Respondents.

No. 90–70311.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 1991.

Decided June 12, 1991.

---

Robert H. Madden and Steven T. Russell, Madden & Crockett, Seattle, Wash., for petitioner.

Carol B. Feinberg, U.S. Dept. of Labor, Office of the Solicitor, Washington, D.C., Kevin Coluccio, Schroeter, Goldmark & Bender, Seattle, Wash., for respondents.

Before WIGGINS, O'SCANNLAIN and NELSON, Circuit Judges.

WIGGINS, Circuit Judge:

Container Stevedoring Company appeals the Department of Labor Benefits Review Board's ("Board") affirmance of an Administrative Law Judge's decision against it. Container Stevedoring argues that it is entitled to relief from the Special Fund in its obligation to compensate Albert Gross for permanent partial disability. 33 U.S.C. § 908(f). Also, Container Stevedoring contests the determination that Mr. Gross has lost any wage-earning capacity, and that it must compensate him for the loss at a rate of $163.28 per week. This court has juris-

diction of the timely appeal. 33 U.S.C. § 921(c). We affirm.

## BACKGROUND

On April 10, 1984, Albert Gross suffered injuries when the truck load he was transporting for his employer, Container Stevedoring Company, shifted, throwing him about in the truck's cab. After being treated for about a year and a half, Mr. Gross returned to light work at Container Stevedoring. He was released for full-time work in November, 1985 and has continued from that time to work essentially full-time. However, Mr. Gross also has continued to complain of pain and to receive some treatment for his injuries to the present time.

He filed a claim for disability compensation in October, 1986. After some correspondence with the claimant, the deputy commissioner at the Office of Workers' Compensation Programs (OWCP) referred the case on June 3, 1987 to the Office of Administrative Law Judges (OALJ) for a formal hearing. Pre-hearing statements were filed pursuant to the ALJ's order in December, 1987 and the hearing was held in January, 1988.

In May, 1988, the ALJ found that Mr. Gross had suffered temporary partial disability from the date of his accident until January 16, 1986. The ALJ also found that Mr. Gross had suffered an unscheduled permanent partial disability to his back and a separate scheduled permanent partial disability to his leg. The ALJ awarded compensation for all three of these disabilities. Despite the fact that Mr. Gross presently earns higher wages than before his injury in 1984 (1983: $56,000; 1987: $60,000), the award for his permanent disabilities includes $163.28 per week in lost wage-earning capacity.

Container Stevedoring simultaneously sought relief from the Special Fund established in 33 U.S.C. § 944 for any liability it might have for Mr. Gross' permanent disabilities. The ALJ held that the OWCP had an absolute defense to Special Fund liability for Mr. Gross' claim due to Container Stevedoring's untimely application for relief from the Fund, or, in the alternative, that the Special Fund has no liability on the merits of Container Stevedoring's application.

The Benefits Review Board affirmed the ALJ's decision, and Container Stevedoring appealed to this court, arguing that it should not be barred from seeking Special Fund relief and should obtain that relief on the merits. Container Stevedoring also argues that the ALJ's determination that Mr. Gross' post-injury wages do not fairly represent his wage-earning capacity is not supported by substantial evidence.

## DISCUSSION

The Benefits Review Board reviews administrative law judges' decisions to determine whether factual findings are supported by "substantial evidence" and to correct any errors of law. 33 U.S.C. § 921(b)(3). This court conducts an independent review of the administrative record to determine if the Board adhered to its standard of review. *Bumble Bee Seafoods v. Director, OWCP*, 629 F.2d 1327, 1329 (9th Cir.1980). Like the Board, this court cannot substitute its views for the ALJ's views or engage in de novo review of the evidence. The ALJ's findings must be accepted when they are supported by substantial evidence. *Id.* The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951). Substantial evidence is not evidence considered in isolation from opposing evidence, but evidence that survives "whatever in the record fairly detracts from its weight." *Id.* at 488, 71 S.Ct. at 464.

## I. APPLICATION FOR SPECIAL FUND RELIEF

Container Stevedoring seeks relief from its compensation responsibilities through the Special Fund for disabled employees under 33 U.S.C. § 908(f). Employers are required to apply for Special Fund

relief "to the deputy commissioner prior to the consideration of the claim by the deputy commissioner." § 908(f)(3). Failure to do so is an absolute defense to Special Fund liability "unless the employer could not have reasonably anticipated the liability of the special fund prior to the issuance of a compensation order." *Id.*

 Permanent disability is a prerequisite to Special Fund relief. § 908(f)(1). Container Stevedoring argues that existence of a permanent disability was not an issue in this case before the deputy commissioner referred the case to the OALJ. Therefore, it could not possibly have complied with the statute by applying for Special Fund relief before the case was transferred to the OALJ. Container Stevedoring's argument is contradicted by the facts. As early as October 1986, Mr. Gross stated in his claim for compensation that his injury resulted in "severe permanent injuries to back, neck, legs, head, face and teeth." Four months earlier in June 1986, the Orthopaedic Panel informed Container Stevedoring that, in its opinion, Mr. Gross had suffered a three percent permanent partial disability from a vertebrae fracture. The panel said it knew of no treatment that would cure his back pain and recommended that even after an endurance program he should not lift over sixty pounds. These reports were sufficient to place the exist-

ence of permanent disability in issue before the deputy commissioner and to put Container Stevedoring on notice that it was in issue.[1]

The regulations instruct employers that a "request for section 8(f) relief should be made as soon as the permanency of the claimant's condition becomes known or is an issue in dispute." 20 C.F.R. § 702.321(b)(1).[2] In this case, permanency was in issue arguably on June 19, 1986 when the Orthopaedic Panel issued its report, and certainly no later than Mr. Gross' claim for compensation on October 23, 1986. In keeping with the regulations, Container Stevedoring should have filed its application for Special Fund relief at that time. After October, Container Stevedoring delayed over seven months without submitting an application. At the very least, in April 1987 when the deputy commissioner requested pre-hearing · applications which are used to prepare a case for a formal hearing before an ALJ, Container Stevedoring should have recognized that the deputy commissioner considered its work completed and should have raised the issue of Special Fund relief immediately. Instead, Container Stevedoring delayed raising the issue until after the deputy commissioner transferred the case to the OALJ.[3]

1. Container Stevedoring did not receive Mr. Gross' pre-hearing statement (form LS–18) again stating that permanency was in issue until after the case was referred to the OALJ. However, this was the third, not the first, time the employer was notified that permanency was in issue. Therefore, the employer was not prejudiced by the delayed mailing of claimant's pre-hearing statement.

2. Container Stevedoring suggests that this regulation exceeds the bounds of the statute requiring applications to be submitted "prior to consideration of the claim by the deputy commissioner." 33 U.S.C. § 908(f)(3). However, the regulation merely suggests a way in which an employer can avoid the problem Container Stevedoring faces in having delayed too long before submitting an application.

3. Soon after the case was transferred, Container Stevedoring requested the ALJ to remand the case to the deputy commissioner so that Container Stevedoring could apply for Special Fund relief. Container Stevedoring did not inform

the ALJ that Mr. Gross had claimed permanent injuries the previous October and no record with that information was available to the ALJ at that time. *See* 20 C.F.R. §§ 702.318–319 (deputy commissioner's file not transferred to the ALJ "under any circumstances;" individual documents must be requested and produced by the parties for the ALJ). Under the mistaken impression that Mr. Gross had not claimed permanent injuries until the case was transferred to the ALJ, the ALJ denied remand because he assumed nothing would prevent Container Stevedoring from applying for Special Fund relief at the formal hearing. Had Container Stevedoring corrected the ALJ's mistake, the ALJ may have allowed remand, although the application was untimely at that time, because the OWCP did not oppose remand for consideration of the Special Fund application. The statute requires the Director to raise and plead the issue as an absolute defense. 33 U.S.C. § 908(f)(3). However, at that time, the burden was on Container Stevedoring to provide the ALJ with all the necessary facts to support its request and it did

■ Container Stevedoring next notes that the deputy commissioner must "consider the claim" before an application for Special Fund relief can be labeled untimely, § 908(f)(3), and argues that the deputy commissioner never considered Mr. Gross' claim of permanent disabilities before he referred it to the OALJ. It is true that the deputy commissioner never held even an informal hearing on any issue in this case. However, the regulations make clear that the deputy commissioner can "consider" a claim in many ways short of a hearing:

> The deputy commissioner is empowered to resolve disputes with respect to claims in a manner designed to protect the rights of the parties and also to resolve such disputes at the earliest practicable date. This will generally be accomplished by informal discussions by telephone or by conferences at the deputy commissioner's office. Some cases will be handled by written correspondence.

20 C.F.R. § 702.311. After Mr. Gross filed his claim in October 1986, the deputy commissioner considered and responded to written correspondence on December 30, 1986, on March 24, 1987, and finally on June 3, 1987, when he referred the case to the OALJ. This correspondence dealt exclusively with the temporary total disability part of Mr. Gross' claim. Although the regulations require the deputy commissioner to consider all new and additional issues raised in the course of proceedings before the case is transferred to the OALJ, 20 C.F.R. § 702.317(d), nothing in the statute or regulations requires the deputy commissioner and the parties to correspond on every issue that has been raised before the case is transferred.

In short, § 908(f)(3) and the associated regulations instruct the deputy commissioner to consider the claim, but do not require correspondence or an informal hearing. Absent evidence that the deputy commissioner decided to transfer the case to the OALJ before evaluating every aspect of the claim,[4] we will assume that the deputy commissioner did consider every aspect of the claim when deciding whether to transfer it for a formal hearing. The regulations instruct the deputy commissioner that

> where permanency has been raised, the failure of an employer to submit a timely and fully documented application for section 8(f) relief shall not prevent the deputy commissioner, at his/her discretion, from considering the claim for compensation and transmitting the case for formal hearing.

§ 702.321(b)(3). The lack of detailed correspondence from the deputy commissioner in this case did not preclude him from considering the case and transferring it to the OALJ. Likewise, the lack of detailed correspondence does not excuse Container Stevedoring for its delay in applying for Special Fund relief.

We agree with the ALJ's conclusion that the OWCP had an absolute defense to Special Fund liability based on Container Stevedoring's untimely application. The ALJ determined, in the alternative, that Container Stevedoring should not be granted Special Fund relief based on the merits.[5]

---

not do so. In the course of later proceedings, the OWCP raised an absolute defense to Special Fund liability based on Container Stevedoring's untimely application. Contrary to Container Stevedoring's arguments, the defense was raised in a timely and proper manner in OWCP's prehearing statement in December, 1987. Nothing prevents the OWCP from changing its earlier position on the matter.

4. The burden to produce that evidence is on the one disputing the deputy commissioner's consideration because nothing in the deputy commissioner's file becomes part of the administrative record unless specifically requested and submitted in evidence before the ALJ. 20 C.F.R. §§ 702.318–319. Container Stevedoring sub-

mitted nothing to the ALJ directly from the deputy commissioner's file. Therefore, we have no record from which to judge the depth of the deputy commissioner's review.

5. Container Stevedoring argues that once the ALJ determined that the OWCP had an absolute defense against Special Fund liability, he had no jurisdiction to consider the merits, and that the ALJ's consideration of the merits should be ignored as dicta. However, alternative holdings are a common practice that prevent the overconsumption of adjudicative resources. Alternative holdings do not divest the adjudicator of jurisdiction merely because they are inconsistent. Further, Container Stevedoring's argument makes little sense in context of its request that

The Board avoided the procedural issue altogether and affirmed on the merits. We are not bound by the Board's analysis even if we agree with the Board's conclusion. *J.M. Martinac Shipbldg. v. Director, OWCP*, 900 F.2d 180, 181 (9th Cir.1990); *Todd Shipyards Corp. v. Director, OWCP*, 848 F.2d 125, 127 n. 3 (9th Cir.1988); *see* 33 U.S.C. § 921(c). We decline to consider the merits of Container Stevedoring's claim for Special Fund relief because the OWCP timely raised an absolute defense to the relief.

## II. MR. GROSS' WAGE–EARNING CAPACITY

■ The relevant statute in this case requires the ALJ to calculate compensation as "66⅔ per centum of the difference between the average weekly wages of the employee and the employee's wage-earning capacity thereafter in the same employment or otherwise...." 33 U.S.C. § 908(c)(21). In the event that the claimant's post-injury actual earnings "do not fairly and reasonably represent his wage-earning capacity," § 908(h) of the statute authorizes the decisionmaker to,

> in the interest of justice, fix such wage-earning capacity as shall be reasonable, having due regard to the nature of his injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future.

*Id.* This court has interpreted § 908(h) to mean that even higher post-injury earnings do not preclude compensation for the claimant if the claimant has, nevertheless, suffered a loss of wage-earning capacity. *Long v. Director, OWCP*, 767 F.2d 1578, 1582 (9th Cir.1985) (holding that higher wages did represent wage-earning capacity

in this case); *Todd Shipyards Corp. v. Allan*, 666 F.2d 399, 402 (9th Cir.) (holding that higher wages did not represent wage-earning capacity), *cert. denied*, 459 U.S. 1034, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982); *Portland Stevedoring Co. v. Johnson*, 442 F.2d 411, 411–12 (9th Cir.1971) (same).

The ALJ's determination that Mr. Gross' equivalent or higher post-injury wages do not represent his wage-earning capacity must be upheld if it is supported by substantial evidence. *Long*, 767 F.2d at 1582. The ALJ relied on three conditions to support his holding that Mr. Gross' post-injury wages do not accurately reflect his loss in wage-earning capacity: (1) A marked decrease in hours worked from the year before injury (2,239.75 hrs.) to the two years following maximum medical improvement after the injury (1986: 1587.5 hrs., 1987 (50 weeks): 1795.5 hrs.); (2) Mr. Gross often works a "hoot owl" shift for only five hours which pays more than an eight-hour day shift, explaining his equivalent or higher post-injury earnings despite reduced hours; and (3) Mr. Gross' testimony that he often works with pain and limitations because of the financial obligations he has to his wife and three children.

The second of these three circumstances is not supported by substantial evidence. One doctor, Dr. Williamson–Kirkland, did report in February, 1986 that Mr. Gross told him he worked the hoot owl shift because the eight-hour shift left him too stiff and sore. However, Mr. Gross testified at the formal hearing in January, 1988 that he did not prefer the hoot owl shift and did not work that shift significantly more than he had before the injury. His testimony at a formal hearing on the subject should be given more weight than a comment in medical notes taken two years earlier.[6]

The decrease in Mr. Gross' post-injury hours is uncontested and can be calculated

---

this court hold that an absolute defense was not available. The logical consequence of that holding would be that consideration of the merits was necessary.

**6.** Because the court discounts Dr. Williamson–Kirkland's evidence, there is no explanation in the record for Mr. Gross' higher post-injury

wages combined with significantly fewer hours. The lack of an explanation is not fatal to Mr. Gross' case and actually bolsters his testimony that his reduced hours reflect time missed for pain and soreness, rather than a preference for the hoot owl shift as the ALJ suggests.

from the employer's records which are before the court. Mr. Gross testified that he had lost hours because of pain and suffering, but that he had not kept track of how many hours. The ALJ inferred that all of the reduction in hours could be attributed to his disability. Given Mr. Gross' testimony that he had the same amount of work available to him as before the injury and that he worked those hours "[e]xcept for times that I've had to take off," *Albert Gross v. Container Stevedoring Co.*, No. 14–77939, Hearing Transcript at 38 (OWCP Jan. 13, 1988), the inference is reasonable.

Mr. Gross' testimony that he continues to work with pain and limitations is not contradicted by anything in the record and is supported by the reports of several doctors. Further, the two most recent treating physicians, Dr. Linder and Dr. Wilder, stated in September, 1986 and December, 1987, respectively, that Mr. Gross suffers a significant permanent partial disability. Dr. Linder put the disability at 22% and Dr. Wilder at 20%.[7] Therefore, Mr. Gross' physical condition supports an inference that his wage-earning capacity is reduced. Further, speaking of Mr. Gross' truck-driving responsibilities at work, Dr. Linder stated in his September 16, 1986 letter to claimant's attorney, "I do not feel that it is reasonable for him to continue to do this type of activity and it can be anticipated that it will lead to worsening symptoms and worsening disability."

The only evidence in the record that counters the suggestion that Mr. Gross' post-injury earnings do not reflect his wage-earning capacity, other than the fact that he has been working essentially full-time and is earning as much or more than he did before he was injured, is Container Stevedoring's suggestion that the availability of Stevedoring work has dropped off significantly since Mr. Gross was injured and that this reduction, not his injury, explains his reduced hours. The argument is based on a comparison of annual figures from 1983 to 1986 showing that the number of workers in Mr. Gross' category has dropped from 506 to 479 during that time, and the average hours worked per worker per year has dropped from 1,658.5 to 1,576.33. The significance of this degree of change is dubious. Even if accepted as significant, it is not clear that the reduction translates into fewer hours available for work. Mr. Gross testified that he perceived that the same number of hours were available to him to work, if he was able, after the injury as before.

We have reviewed an ALJ's consideration of the question whether post-injury wages accurately represent wage-earning capacity in three prior cases. In *Todd Shipyards*, we noted that although a claimant's post-injury wages were higher than his pre-injury wages because of a promotion, his 25% disability made him unfit for his previous jobs in the shipbuilding industry and for many jobs in the open market should he someday lose his position for whatever reason. 666 F.2d at 402. Therefore, we sustained the ALJ's holding as supported by substantial evidence that the claimant's wages did not fairly represent his wage-earning capacity. *Id.*

In *Portland Stevedoring*, we reversed the district court and reinstated compensation for loss of wage-earning capacity for a worker whose increased post-injury wages were due to a promotion, a raise, and an extra shift. 442 F.2d at 412. We said, "In light of the limited scope of judicial review in cases such as this, we think that the findings of the Deputy Commissioner should have been allowed to stand. Those findings were not without substantial evidentiary support." *Id.*

In *Long*, we again affirmed the holding of an ALJ regarding wage-earning capacity. However, in that case, the ALJ had found that a man with a 10% disability, who had been promoted twice since the injury and had held his then-current posi-

---

7. The whole person disability estimate resulting from all of Mr. Gross' injuries given by Dr. Wilder was 20%, not 23% as the ALJ supposed. The ALJ mistakenly added 5% due to Mr. Gross' leg injury to Dr. Wilder's estimate of "whole person" disability, rather than the 2% "whole person" disability which Dr. Wilder said resulted from his leg injury. *Gross*, Employer's Ex. 9, Deposition of Thomas C. Wilder, Jr., M.D. at 38 (OWCP Dec. 15, 1987).

tion for almost ten years, was in no danger of losing his job. 767 F.2d at 1582–83. Although he could not work at his previous job or at certain other jobs on the open market, the ALJ held that his wages fairly represented his wage-earning capacity, and we affirmed that holding.

The reasoning in *Todd Shipyards, Portland Stevedoring*, and *Long* supports our decision to affirm the Board and the ALJ in granting Mr. Gross compensation for lost wage-earning capacity. Mr. Gross' 20–22% disability, combined with his reduced hours and the fact that he continues to work at his present job in pain because of family obligations, is substantial evidence that his present wages do not fairly represent his wage-earning capacity.[8] Container Stevedoring's evidence of a reduction in available work is not compelling and is contradicted by Mr. Gross' testimony from his own experience. Therefore, we affirm the Board's and the ALJ's holding that Mr. Gross' wages do not fairly represent his wage-earning capacity.

■ Container Stevedoring also argues that the ALJ chose inappropriate figures from which to calculate the loss in wage-earning capacity and the weekly compensation due Mr. Gross. The ALJ simply compared the average hours-per-week worked by Mr. Gross in 1986–87 with the average hours per week worked in 1983, the year before the accident. The post-injury average was 23% lower than the pre-injury average. The ALJ said that Mr. Gross had sustained a 23% loss in wage-earning capacity and, therefore, awarded him two-thirds of the dollar amount of that loss calculated from his weekly wage on the date of injury. Container Stevedoring was ordered to pay Mr. Gross $163.28 per week.

Container Stevedoring suggests that the ALJ should have compared only 1987 with 1983 hours, yielding a 16.6% loss in wage-earning capacity and a compensation rate of $118.00 per week. Container Stevedoring points out that Mr. Gross worked seventy hours less in each of the first three quarters of 1986 than in any quarter thereafter. It argues that this represents a significant and sustained improvement in the hours Mr. Gross is able to work.

The ALJ could have chosen to compare only 1987 with 1983 hours. However, comparing 1986 and 1987 with 1983 hours makes sense in context. The ALJ determined from medical evidence that January 16, 1986 was the point of maximum medical improvement from Mr. Gross. That date was important as the last day for which Container Stevedoring owed Mr. Gross temporary partial disability payments. Container Stevedoring did not appeal the choice of that date to the Board or to this court. It makes sense to compare the average weekly hours from all the time Mr. Gross has worked since the date of maximum medical improvement with the hours worked in the year before injury. We hold that the ALJ's method of calculating the rate of compensation is supported by substantial evidence.

## CONCLUSION

We AFFIRM the Board. We agree with the ALJ's holding that the OWCP has a valid absolute defense to Special Fund liability because of Container Stevedoring's untimely application. We also agree with the Board that the ALJ's determination that Mr. Gross' post-injury wages do not reflect his wage-earning capacity is supported by substantial evidence, and that

---

8. Unlike the ALJ in *Long,* the ALJ in this case apparently did not consider Mr. Gross' present job stability or lack of it when deciding that his wages do not fairly represent his wage-earning capacity. The statute does instruct the decision-maker to "have due regard" for the claimant's usual employment when fixing his wage-earning capacity, 33 U.S.C. § 908(h), and more information on that issue may have influenced the ALJ one way or the other. Container Stevedoring argues in its Reply Brief that as an "A" long-

shoreman, Mr. Gross is in no danger of demotion. This information is not part of the record before the court and appears for the first time in the Reply Brief. Therefore, we decline to rely on it. Job stability was not discussed by the court in *Todd Shipyards* or *Portland Stevedoring* and may not have been considered in those cases as well. The lack of evidence on that point does not render the ALJ's decision unsupported by substantial evidence.

the ALJ's calculation of the rate of compensation is acceptable.

O'SCANNLAIN, Circuit Judge, concurring:

Under the applicable regulations, a request for special fund relief should be made "as soon as the permanency of the claimant's condition becomes known or is an issue in dispute." 20 C.F.R. § 702.321(b). The court today concludes that permanency is either "known" or "in dispute" whenever it is mentioned in a compensation-related document, however tangential to the actual course of proceedings such reference may be. This harsh rule does not comport with the relevant statutory or regulatory language, nor is it supported by the policies underlying the LHWCA or by common sense. Accordingly, I disagree with the court's conclusion that Container Stevedoring's request for special fund relief was untimely. Rather, I—like the Benefits Review Board—would affirm the denial of special fund relief on the merits.

### I

"The LHWCA ... favors the dispositions of claims—the allocation of statutory benefits and burdens—on the merits of particular cases." *Cornell University v. Velez*, 856 F.2d 402, 405 (1st Cir.1988) (upholding ALJ's sua sponte consideration of an untimely special fund application). There is, of course, a "systemic interest in demanding timely pleadings which narrow and define the issues" which must be balanced against the "need to render justice." *Id.;* see also *Brady–Hamilton Stevedore Co. v. Director, OWCP*, 779 F.2d 512, 513 (9th Cir.1985) (observing that a "claim for [special fund] relief must be made by the employer at the first hearing ... to assure that all factual issues are known and subject to litigation at the same time"). Here, however, the court's reading of the relevant statutes and regulations has needless-ly tipped the scales against the rendering of justice. Indeed, this is one of the rare cases in which both the interest of justice *and* the interest of expediency favor resolution of the relevant issue on the merits.

In reaching its result today, the court found two isolated references to permanency from which it concluded, in complete disregard of the rest of the record, that permanency was either "known" or "at issue." [1] The relevant statutory and regulatory language, however, suggests that such a rigid approach should not be employed in determining the timeliness of a request for special fund relief. For example, the applicable federal regulation provides that:

> A request for section 8(f) relief should be made as soon as the permanency of the claimant's condition becomes known or is an issue in dispute. This could be when benefits are first paid for permanent disability, or at an informal conference held to discuss the permanency of the claimant's condition.

20 C.F.R. § 702.321(b). The illustrations in this regulation are telling. Notably, under either scenario—payment of permanent disability benefits or discussion of permanency at an informal conference—all parties involved will necessarily understand which issues are truly disputed. Under both scenarios listed in the regulation, the likelihood of confusion or misunderstanding, such as occurred here, would be diminished.

Similarly, the controlling statute also does not require the court's harsh result. Section 908(f)(3) provides in relevant part:

> Any request ... for apportionment of liability to the special fund ... shall be presented to the deputy commissioner prior to the consideration of the claim by the deputy commissioner. Failure to present such request prior to such consideration shall be an absolute defense to the special fund's liability for the pay-

1. The court is not clear about which standard of review it employed in analyzing the timeliness issue. Whether a request for special fund relief is timely is a legal issue which we may review de novo. *See Brady–Hamilton*, 779 F.2d at 513

("Whether the matter of Section 8(f) relief may be considered is a procedural legal matter and not a question of fact which requires the ALJ to make a finding based upon substantial evidence.").

ment of any benefits with such claim, *unless the employer could not have reasonably anticipated the liability of the special fund prior to the issuance of a compensation order.*

33 U.S.C. § 908(f)(3) (emphasis added). Determination of "reasonable anticipation" requires, almost by definition, consideration of the *entire* record.[2]

When the record in the present case is viewed in its entirety, a different picture than that presented by the court emerges. The record, such as it is,[3] suggests that Gross pursued recovery of benefits for *temporary*, total disability before the OWCP's claims examiner. Gross requested an informal hearing before the deputy commissioner at least twice; each request was denied. Following the second, an OWCP claims examiner wrote to Gross's counsel:

> Your request for informal conference was addressed on 12/30/86. There have been no subsequent medical reports submitted indicating that the claimant is TTD [Temporary Total Disabled]. The last medical report that you submitted from Dr. Wilder indicated that the claimant continued to work.

While Gross's actual requests for an informal hearing are not part of the record, the claims examiner's response suggests that Gross requested a hearing only on the temporary total disability issue. Container Stevedoring was entitled to rely upon Gross's requests in determining the matters at issue. *See* 20 C.F.R. § 702.231(b)(i)

---

**2.** A brief aside on the purpose of the special fund is warranted here. Under section 8(f) of the LHWCA, an employer's liability for compensating a permanently disabled employee might be limited if the employee was disabled prior to the most recent injury. "By so limiting an employer's liability, Congress wished to facilitate and encourage the hiring of partially disabled people. Congress sought to ensure that employers would not hesitate to hire a partially disabled person out of fear of increasing their liability in the event that a work-related injury combined with the pre-existing partial disability to result in a [greater] disability." *Todd Pacific Shipyards Corp. v. Director, OWCP (Mayes)*, 913 F.2d 1426, 1429 (9th Cir.1990) (citations omitted).

Employers are the prime beneficiaries of the special fund. However, in 1984 Congress, alarmed by the "burgeoning and uncontrolled growth in the utilization of the Special Fund," *see* H.R.Rep. No. 98–570 (pt. I), 98th Cong., 2d Sess. 20 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 2734, 2753, amended section 8(f) to added the present version of the timeliness defense. "[T]he Secretary," the House Committee reasoned, "has an obligation to safeguard the Special Fund." H.R.Rep. No. 98–570 at 21, 1984 U.S.Code Cong. & Admin. News at 2754. Similarly, the Conference Committee stated that "[t]he conferees intend by this provision to encourage employers to raise the special fund issue early in the claims adjudication process, in order to assure the deputy commissioner and the Director of OWCP the opportunity to examine the validity of the employer's basis for seeking special fund relief." H.R.Conf. Rep. No. 98–1027, 98th Cong., 2d Sess. 32 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 2771, 2781. Thus, the provisions of section 8(f) must be construed in light of the special fund's overarching purpose, albeit tempered by the need to safeguard the fund's limited resources.

**3.** The record regarding the timeliness issue is notably incomplete. As the court correctly notes, the deputy commissioner's file is not transferred to the ALJ "under any circumstances." *Ante* at 1547–48 n. 3 (quoting 20 C.F.R. §§ 702.318–19). Thus, the burden of providing copies of pre-ALJ proceedings falls upon the parties. In part because of the miscommunications which have characterized virtually every aspect of this case, some of the documents which would have been helpful for our review were not made part of the record.

Shortly after the case was transferred to the ALJ, Container Stevedoring requested that the case be remanded to the deputy commissioner so that Container Stevedoring could request special fund relief. The OWCP expressly did not oppose this motion. The ALJ, however, denied the motion in the apparent belief that Container Stevedoring could apply for special fund relief at the formal hearing. Thereafter, in its prehearing statement, the OWCP listed as an issue "[w]hether there is an absolute bar to section 8(f) relief based on the employer's untimely request for such relief." The OWCP did not elaborate on its reasoning, nor did it introduce any evidence on the issue. Indeed, the issue was not mentioned again until nearly a month after the formal hearing, when the OWCP raised the issue again in its Proposed Findings of Fact and Conclusions of Law. While Container Stevedoring could have been more diligent in defending against the OWCP's timeliness contentions, its failure to present a finely tuned defense is understandable in light of OWCP's conclusory allegations, OWCP's permissible but tardy position-switch on the issue, and Container Stevedoring's reasonable belief that permanency had not, in fact, been raised before the OWCP.

("All parties are required to list issue [sic] reasonably anticipated to be discussed at the conference when the initial request for a conference is made and to notify all parties of additional issues which arise during the period before the conference is actually held.").

Moreover, there is nothing in the record to indicate that the deputy commissioner ever actually considered Gross's claim of permanent disability, a necessary element in the court's timeliness analysis. As previously noted, the record suggests that the deputy commissioner considered only Gross's claim of temporary total disability. I agree with the court that the deputy commissioner, while required to consider all claims presented to him or her, is not obligated to correspond or to hold an informal hearing regarding each such claim. *See ante* at 1548. However, I, unlike the court, cannot assume that the claim was considered where the clear inference drawn from the correspondence in the record is that the deputy commissioner considered *only* the total temporary disability claim.

Finally, and perhaps most significantly, the equities in this case weigh in Container Stevedoring's favor. The OWCP's correspondence to Gross suggests that an informal hearing was unnecessary due to *Gross's* failure to provide evidence corroborating his temporary, total disability claim. It is truly ironic that *Gross's failure* to articulate clearly his claims before the deputy commissioner now supports a procedural bar *against Container Stevedoring* in its request for section 8(f) relief. Indeed, the court's reasoning may actually encourage parties to obfuscate issues and to fail to disclose fully.

In short, this case at the administrative level was marked by a lack of communication between the parties and the ALJ. The parties must equally share responsibility for the communications breakdown. The negative consequences of the failure to communicate should not redound solely to the employer. Because Container Stevedoring sought special fund relief as soon as it was reasonably clear that permanency

was truly at issue, I would hold that the request was timely.

## II

While I would not bar Container Stevedoring's request for special fund relief on grounds of untimeliness, I would affirm the denial of special fund relief on the merits. To be entitled to section 8(f) relief, the employer must establish (1) that the employee had an existing permanent partial disability prior to the employment injury; (2) that the disability was manifest to the employer prior to the employment injury; and (3) that the current disability is not due solely to the most recent injury. *Todd Pacific Shipyards v. Director, OWCP (Mayes)*, 913 F.2d 1426, 1429 (9th Cir.1990) (hereinafter *Mayes*).

Container Stevedoring contends that Mr. Gross had two pre-existing injuries: (1) a compression fracture sustained in 1969, and (2) a degenerative disc disease diagnosed in November 1987. As to the first alleged pre-existing jury, the ALJ found that Container Stevedoring had not shown either the first or third factors. Based on testimony of one Dr. Wilder, the ALJ concluded that the 1969 back injury was neither a "permanent" disability, nor did it in any way impact the seriousness of Mr. Gross's 1984 injury.

As to the degenerative disc disease, the ALJ concluded that Container Stevedoring proved neither the first nor the second factor. The ALJ observed that the disease was first diagnosed in November 1987, three years after the injury at issue. Thus, the ALJ concluded, the injury was neither pre-existing nor manifest to Container Stevedoring.

The ALJ's findings of fact must be treated as conclusive if supported by substantial evidence. *See Mayes*, 913 F.2d at 1428. Here, while evidence adduced by Container Stevedoring supported contrary inferences, the ALJ's conclusions were reasonable and supported by medical testimony. Thus, I do not believe that it can fairly be said that the conclusions were not supported by substantial evidence.

## III

In sum, I would affirm the denial of Container Stevedoring's request for special fund relief on the merits, rather than on the procedural ground invoked by the court. However, I concur in the court's opinion in all other respects.