**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 98-60316

---

POOL COMPANY;
SIGNAL MUTUAL INDEMNITY ASSOCIATION LIMITED, CARRIER,

Petitioners,

VERSUS

DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS;
U.S. DEPARTMENT OF LABOR,

Respondents.

---

Petition for Review of an Order of the
Benefits Review Board

---

March 23, 2000

Before HIGGINBOTHAM and PARKER, Circuit Judges, and WARD, District Judge[*]:

ROBERT M. PARKER, Circuit Judge:

Petitioners Pool Offshore Company, the employer, and Signal Mutual Indemnity Association Limited, the compensation carrier, (collectively referred to as "Pool") petition this court for review of the Benefits Review Board's ("the Board") affirmance of the Administrative Law Judge's ("ALJ") award of disability benefits to

---

[*]District Judge of the Eastern District of Texas, sitting by designation.

1

claimant Randy White.  We affirm.

## I. FACTS AND PROCEDURAL HISTORY

On April 13, 1993, White injured his shoulder in the course and scope of his employment with Pool.  Because White was employed on a fixed drilling platform located on the Outer Continental Shelf, the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-09 (1994) ("LHWCA"), governs question regarding his entitlement to compensation for his injury.

Pool voluntarily paid White temporary total disability benefits from April 1993 thru May 1994.  On April 25, 1994, White underwent a functional capacity evaluation that concluded White had sustained:

| | |
|---|---|
| Total impairment this joint [left shoulder] | 10% |
| Total upper extremity impairment all joints | 10% |
| Total whole person impairment | 6% |

Pool then paid White permanent partial disability benefits pursuant to the schedule in 33 U.S.C. § 908(c)(1) and (19)(the "Section 8 Schedule") from May 1994 to December 1994.  No further benefits were due White under the Section 8 Schedule.

On January 18, 1995, White filed a claim for compensation alleging that his shoulder injury was not subject to the Section 8 Schedule and requested reinstatement of his benefits.  White argued that the schedule of compensation benefits for arm disabilities did not apply to his claim because he had injured his shoulder, which is a non-scheduled injury.  The ALJ agreed with White, ruling that White's shoulder injury was not covered by the Section 8 Schedule arm disability provisions and ordering Pool to pay additional

2

benefits to White pursuant to 33 U.S.C. § 908(c)(21), which covers LHWCA compensation for non-scheduled injuries. Pool appealed to the Benefits Review Board ("the Board"), which affirmed the ALJ's ruling on this issue.

Pool petitions this court to review the Board's Order. The Director of the Office of Worker's Compensation Programs ("the Director") filed a motion to dismiss on jurisdictional grounds, which we denied. The Director then declined to file a brief on the merits. Further, White has not filed a brief or otherwise appeared before this court. We therefore address the issue raised with the benefit of briefs from Pool only.

## II. DISCUSSION

### a. Standard of Review

We review decisions of the Benefits Review Board for errors of law and for adherence to the statutory principles set forth in 33 U.S.C. § 921(b)(3). This review is *de novo;* because the Board is not a policy-making agency, its interpretations of the LHWCA are not entitled to any special deference from the courts. *See Potomac Elec. Power Co. v. Director, Office of Workers' Compensation Programs,* 449 U.S. 268, 278 & n.18 (1980)("*PEPCO*").

### b. Background

LHWCA compensates workers for a permanent partial disability in two ways:

> First, if the injury is of a kind specifically identified in the schedule set forth in §§ 8(c)(1)-(20) of the Act, 33 U.S.C. §§ 908(c)(1)-(20), the injured employee is entitled to receive two thirds of his average weekly wages for a specific number of weeks, regardless of whether his earning capacity has actually been impaired.

3

Second, in all other cases, § 8(c)(21), 33 U.S.C. § 908(c)(21), authorizes compensation equal to two-thirds of the difference between the employee's preinjury average weekly wages and his postinjury wage-earning capacity, during the period of disability.

*PEPCO*, 449 U.S. at 269-70.  In *PEPCO,* the Supreme Court held that a claimant cannot elect between recovery under § 8(c)(1)-(20) and § 8(c)(21).  The Court explained that § 8(c) provides a schedule which "covers 20 different specific injuries," and that § (8)(c)(21) "applies to any injury not included within the list of specific injuries."  *Id.* at 274.

In this case, the ALJ determined that the claimant suffered a shoulder injury that "does not come within the Section 8 Schedule, but rather is a Section 8(c)(21) disability."  Section 8 Schedule lists various body parts, including arms, legs, hands, feet, and eyes.  Shoulders are not listed.  Pool argues that the ALJ erred because, although the shoulder injury is an unscheduled loss, it resulted in an arm disability, which is a § 8(c) scheduled loss. We are thus called upon to decide whether the situs of the injury (the shoulder) or the character of the resulting disability (impaired arm) is determinative under LHWCA's Section 8 Schedule scheme.

We note first that, although this question is *res nova* in the Fifth Circuit, published cases from the Board, *see, e.g.*, *Andrews v. Jeffboat, Inc.*, 23 BRBS 169 (1960), and from other circuits unanimously support the Board's holding.  *See Barker v. United States Dep't of Labor*, 138 F.3d 431 (1st Cir. 1998)*; Long v. Director, OWCP*, 767 F.2d 1578 (9th Cir. 1985).  Pool nevertheless

4

argues that the plain language of the statute, extrapolations from the Supreme Court's holding in *PEPCO* and principles undergirding the LHWCA scheme require reversal of the Board's decision.

**c. Plain Language of the Statute**

Pool argues first that the plain language of § 8(c) indicates that it is the character of the disability, and not the situs of the injury, that controls.[1] Pool points out that § 8c(1)-(19) uses the word "disability" rather than the word "injury," and that subsection (18) refers to a "total loss of use" and subsection (19) refers to "partial loss or partial loss of use." Pool's argument does not convince us that the plain language of the statute mandates agreement with their position. First, § 8(f), addressing

---

[1]The Section 8 Schedule of the LHWCA reads in pertinent part:

Compensation for disability shall be paid to the employee as follows:

(C) permanent partial disability: in case of disability, partial in character but permanent in quality, the compensation shall be 66 2/3 percentum of the average weekly wages which shall be in addition to compensation for temporary total disability or temporary partial disability paid in accordance with sub-section (b) or sub-section (e) of this section, respectively, and shall be paid to the employee, as follows:

    (1) arm loss, three hundred twelve weeks' compensation.
    (2) leg loss, two hundred eighty-eight weeks' compensation.
    (3) hand loss, two hundred forty-four weeks' compensation.
    (4) foot loss, two hundred five weeks' compensation.
    (5) eye loss, one hundred sixty weeks' compensation.
* * *
    (18) total loss of use: compensation for total loss of use of a member shall be the same as for loss of the member.
    (19) partial loss of partial loss of use: compensation for permanent partial loss of use of a member may be for a proportionate loss or loss of use of the member. . . .

33 U.S.C. § 908(c).

"injury increasing disability," refers to "injur[ies] falling within the provisions of subsection(c)(1)-(20)." 33 U.S.C. § 908(f)(1). Second, the language in subsections (18) and (19) may be explained in a way that is consistent with the Board's holding. If there is an injury to a member covered by the schedule, subsection (18) provides that if there is total loss of use from the injury, then the recovery is the same as for loss of the member. Similarly, subsection (19) provides that if there is an injury to a member that results in a partial loss, then the compensation is for the proportionate loss of that member (as opposed to compensation for a total loss.) Thus, the Board's decision does no violence to the plain language of the statute.

**d. PEPCO's Dicta**

Second, Pool submits that dicta in the *PEPCO* decision inferentially shows that the Supreme Court would support the statutory interpretation that Pool advances. In *PEPCO*, an injury to the claimant's left knee resulted in a 5% to 20% disability to one leg. Although the leg disability was scheduled pursuant to Section 8(c), the claimant sought a larger recovery allowable for non-scheduled injuries because his actual wage earning capacity was reduced by more than 40%. *See PEPCO,* 449 U.S. at 271. The ALJ permitted the claimant to recover pursuant to the provisions for non-scheduled disabilities and the Board affirmed. The United States Court of Appeals for the District of Columbia also affirmed, reasoning that the recent trend in workers' compensation law was to move away from the exclusivity of the Schedule. *Id.* at 272. The

6

Court of Appeals further held that the provision for non-scheduled disabilities was a remedial alternative in cases where the Schedule proved inadequate to fully compensate a claimant. *Id.* In reversing the Court of Appeals, the Supreme Court held that, contrary to the claimant's contention, the provision for non-scheduled injuries did not provide an alternative for claimants who could not realize adequate compensation through the Section 8 Schedule. *Id.* at 271.

*PEPCO* does not purport to answer the question now before this court. *PEPCO* is instructive, however, in its method of statutory interpretation. In determining the meaning of the statute, the Court first considered the plain language of the statute. Pool's argument focuses on the *PEPCO* majority opinion's statement that, "[t]he language of the [LHWCA] plainly supports the view that the character of the disability determines the method of compensation." *Id*. at 273. Pool submits that this statement supports the view that the situs of disability is determinative of whether the Section 8 Schedule is applicable rather than the situs of the injury. We are not so persuaded. *PEPCO* thereafter explained that the schedule covers "20 different specific *injuries*" and that § 8(c)(21) "applies to any *injury* not included within the list of specific injuries." *Id*. at 274 (emphasis added). We find that particular *PEPCO* language less illuminating than Pool suggests.

### e. LHWCA's New York Ancestry

The *PEPCO* Court examined the legislative history of LHWCA, explaining that the statute "was patterned after a similar

7

'scheduled benefits' provision in the New York Workmen's Compensation Law enacted in 1922." 449 U.S. at 275. A New York court took up the issue, later addressed in *PEPCO,* as it pertained to the New York statute after the LHWCA was passed in 1927. *See Sokolowski v. Bank of America*, 184 N.E. 492, 494 (N.Y. 1933). The *PEPCO* court concluded that nothing in the original legislative history or subsequent amendments "indicates that Congress did not intend the plain language of the federal statute to receive the same construction as the substantially identical language of the New York ancestor." 449 U.S. at 276.

The Ninth Circuit in *Long v. Director*, 767 F.2d 1578 (1985), addressed whether a claimant may receive benefits under § 8(c)(2) because of an injury to his back that impaired his leg. The court explained that it could not find anything in the legislative history of the statute that considered this issue. *See Long,* 767 F.2d at 1581. However, prior to the passage of LHWCA in 1927, a New York court addressed this issue. *See Knight v. Ferguson*, 198 A.D. 756 (N.Y. App. Div. 1921). The New York court interpreted the New York statute to preclude recovery of benefits under the schedule for the impairment to the claimant's arms caused by an injury to his neck. *See Long,* 767 F.2d at 1581-82. The Ninth Circuit reasoned that "Congress may be presumed to have intended to adopt the same construction when it enacted the LHWCA." *Long*, 767 F.2d at 1582. The *Long* court concluded that an employee who suffers an injury to an unscheduled portion of the body (back) that impairs a scheduled portion (leg) may not receive benefits under

8

the § 8 schedule.  Instead, the person must recover under § 8(c)(21). *See id.* at 1583.  Like the Ninth Circuit, we find New York's interpretation in *Knight* instructive.

**f. Purpose and Intention of the Act**

*PEPCO* also teaches that we should examine the purpose of the Act and the intention of Congress in interpreting LHWCA.  *See PEPCO*, 449 U.S. at 280.  Following *PEPCO,* the First Circuit in *Barker v. U.S. Dep't of Labor*, 138 F.3d 431 (1st Cir. 1998), after considering the language of the statute and its New York ancestry, looked to the purpose and Congressional intention behind LHWCA before joining *Long*'s position on the Section 8 Schedule question. The claimant in *Barker,* in facts indistinguishable from the case at bar, suffered an injury to his neck and shoulder, which resulted in a permanent partial disability to his left arm.  *See* 138 F.3d at 433.  The court stated that "[a]lthough the language of [§ 8(c)], taken in isolation, may admit of differing interpretations, one thing is certain – an individual can obtain compensation only through the statutory path appropriate to the character of his injury.  The structure and purpose of the statute demand this construction."  *Id.* at 434-35.  The court explained that, if an individual suffers an injury to the neck or shoulder, which is unscheduled, then the individual must recover under § 8(c)(21), "no matter that the petitioner's symptoms extend beyond the injured area."  *Id.*  The schedules were set up to ameliorate administrative burdens by providing a simple method of determining the effect on the wage-earning capacity of typical and classifiable injuries.

*See id.* at 435. Streamlining compensation for arm injuries, which are unlikely to effect other body parts, while leaving open the question of appropriate compensation levels for injuries that may effect multiple body parts, such an as injury to a neck, is consistent with these goals.

Further, *PEPCO* rejects the argument that a court interpreting LHWCA should concern itself with the fairness of the remedy dictated by the statute in a particular case. *See* 449 U.S. at 284. The structure of the statute involves compromises between the competing interests of accuracy in determining the amount of a claimant's loss and ease of administration. *See id.* at 281-82. In *Long*, it is the injured employee who is contending that his back injury produced a leg disability which entitles him to the automatic but limited recovery under § 8(c)(2). *See Long*, 767 F.3d at 1580. He took that position because his post-injury employment resulted in higher wages than he was making at the time of his injury and therefore he could not establish the loss of earning capacity necessary to entitle him to recover under section 8(c)(21). *See id.* at 1582. Applying the situs of the disability rule, the Ninth Circuit denied recovery to the worker. *See id.* at 1583.

Finally, it bears mentioning that Pool's proposed interpretation opens the door for White to claim recovery under both § 8(c)(1)(arm) and § 8(c)(21)(unscheduled injury to shoulder). This potential for double compensation further undercuts the simplifying purpose of the schedule.

Consequently, we conclude that the purposes underlying the LHWCA lend further support to the Board's holding.

### III. CONCLUSION

Based on the foregoing, we conclude that a claimant seeking compensation for the loss of use of a scheduled member resulting from an injury to an unscheduled body part may recover only under § 8(c)(21). We therefore affirm the Board's decision.

AFFIRMED.

11