141 F.3d 1178
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Rene OLDRICH, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, Respondent.
 No. 96-70829.
OWCP No. XX-XXXXXXX.
 BRB No. 95-0962.
 United States Court of Appeals,
Ninth Circuit.
 .
Argued and Submitted March 2, 1998.
Decided March 23, 1998.
 
 1
 Petition for Review of an order of the Benefits Review Board.
 
 
 2
 Before ALARCON, HAWKINS, Circuit Judges, and BREWSTER**, District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 Rene Oldrich ("Oldrich") petitions for review of a Decision and Order on Second Remand of the Benefits Review Board ("Board") that affirmed, pursuant to Public Law No. 104-134, an administrative law judge's ("ALJ") order denying Oldrich's claims for total and partial disability benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. We have jurisdiction pursuant to 33 U.S.C. § 921(c). We deny Oldrich's petition.
 
 
 5
 * Oldrich has been an avid athlete since grade school, participating in many sports including softball. While working for Lockheed Shipbuilding ("Lockheed") as a shipscaler, she injured her shoulder diving through a porthole after a loose air hose struck her in the face and neck. Oldrich was treated by Dr. Kirby for her injury.
 
 
 6
 Three months after her injury, Oldrich was laid-off from Lockheed because of a reduction in work force. She continued to see Dr. Kirby. Although Dr. Kirby's initial diagnosis did not mention Oldrich's sports activities, after several subsequent visits, Dr. Kirby noted a relationship between Oldrich's symptoms and the throwing of a softball. On May 19, 1983, Dr. Kirby reported to Lockheed, Oldrich's employer, that "I don't feel that her ongoing problems would be adequately explained by the contusion she sustained last November and I feel this is more related to her sports activities than to the industrial injury."
 
 
 7
 On January 12, 1984, over a year after her initial injury, Dr. Kirby saw Oldrich again for her shoulder injury. Dr. Kirby noted that Oldrich "apparently has been having some problems concerning insurance coverage." Dr. Kirby also revised his diagnosis and stated "I do believe this is a work related injury which had probably been aggravated by her throwing in sports." The next day, Oldrich's attorney filed a claim for compensation.
 
 
 8
 Approximately one month later, an investigative firm began conducting surveillance of Oldrich to document her activities. She had been running a landscape company since her lay-off from Lockheed. During the next six to eight weeks, numerous photographs were taken of Oldrich performing landscaping work including use of a pickax to chop down dead tree stumps, use of a chain saw, dumping large plastic trash cans over the side of a pickup truck, and carrying large tree branches overhead.
 
 
 9
 On March 12, 1984, Oldrich was examined by the Orthopaedic Panel Consultants ("OPC"). In a report written by Dr. Bradley, dated March 28 1994, the OPC diagnosed Oldrich's condition as a "[r]ight shoulder strain with suggestion of impingement syndrome and possible small rotator cuff tear." The OPC concluded that Oldrich could pursue gainful employment, but she was advised to avoid prolonged overhead work and lifting in excess of twenty pounds above the shoulder.
 
 
 10
 The OPC subsequently reviewed the surveillance photos taken of Oldrich. In a letter dated April 23, 1984, the OPC noted that the photographs showed Oldrich engaging in activities involving the use of her right shoulder that were "more vigorous" than those described by Oldrich during her interview with the OPC. The OPC revised the work restrictions, concluding that Oldrich was capable of working with her arms above her shoulder for prolonged periods and lifting up to forty pounds over her shoulders.
 
 
 11
 On July 5, 1984, Oldrich was again seen by Dr. Kirby. In a letter dated July 31, 1994 to Oldrich's attorney, Dr. Kirby stated that he agreed with the OPC's initial recommendation that Oldrich pursue employment where she was not required to work with her hands above her shoulders and would not be required to lift more than twenty pounds.
 
 
 12
 On March 3, 1986, Oldrich was again examined by the OPC. The OPC reaffirmed the original work restrictions as set forth in the March 28, 1994 report. In his April 30, 1986 deposition, Dr. Bradley, a member of the OPC, testified that the restrictions contained in the March 3, 1986 report should have been the same as the revised report after the OPC viewed the surveillance tapes, not the original March 28, 1994 report. Dr. Bradley also testified that he was familiar with the work of shipscalers, and he believed Oldrich could return to her usual employment given either the OPC's restrictions or Dr. Kirby's more stringent restrictions.
 
 II
 
 13
 A hearing was held on this matter on May 13 and 14, 1986. At the hearing, Oldrich admitted to making misrepresentations over the prior several years. Two of her roommates testified that they saw Oldrich lift objects above her shoulder and work with her hands overhead without any complaints of pain or discomfort. They also stated that they thought Oldrich's claim was phony.
 
 
 14
 Finally, on June 14, 1986, two days after the record in this case was closed, Lockheed's attorney, Charles Henshall, observed Oldrich actively participating in a competitive swimming meet using her shoulder in an unrestricted manner in three individual and two relay events. Henshall's sworn statements were admitted into evidence at the hearing conducted after the second remand.
 
 
 15
 The ALJ denied Oldrich's claim for total disability because he found that Oldrich failed to make out a prima facie case of total disability. He found evidence that Oldrich could return to her usual employment after February 23, 1982. The ALJ also denied Oldrich's claim for partial disability because he found that Oldrich did not suffer any loss of wage-earning capacity.
 
 III
 
 16
 In cases where the Board's decision is affirmed pursuant to Public Law No. 104-134, we review the ALJ's decision for errors of law or failure to adhere to the substantial evidence standard. See Jones Stevedoring Co. v. Director, OWCP, 133 F.3d 683, 687 (9th Cir.1997). We cannot substitute our views for those of the ALJ or engage in a de novo review of the evidence. See Container Stevedoring Co. v. Director, OWCP, 935 F.2d 1544, 1546 (9th Cir.1991) (citation omitted).
 
 
 17
 Substantial evidence supports the ALJ's finding that Oldrich did not make a prima facie case of total disability because she failed to establish that she could not return to her usual employment. See Edwards v. Director, OWCP, 999 F.2d 1374, 1375 (9th Cir.1993); Young v. Heckler, 803 F.2d 963, 967 (9th Cir.1986). Although Dr. Kirby and the OPC disagreed as to Oldrich's medical restrictions and ability to perform her usual employment, Oldrich's lack of credibility, the testimony of Oldrich's roommates, and the surveillance films constituted substantial evidence supporting the ALJ's decision to credit the OPC's restrictions and recommendations.
 
 
 18
 Other evidence in support of the ALJ's conclusion that Oldrich could return to her usual employment was that she performed her usual employment for Lockheed after she was injured until she was laid-off. Oldrich claimed that this work was light duty, and not her usual employment. It was not improper for the ALJ to conclude, however, based on Oldrich's lack of credibility, that her testimony was insufficient to prove that the work she did was light duty.
 
 
 19
 Finally, while Oldrich's vocational expert, Kent Shafer, testified that Oldrich could not return to her usual employment given the restrictions imposed by Dr. Kirby, there was substantial evidence in support of the ALJ's finding that Dr. Kirby's restrictions were not to be credited. Furthermore, when Shafer was asked to evaluate whether Oldrich could return to her usual employment in light of these restrictions, he stated that it would be "a very, very close call." It was not irrational for the ALJ to find this evidence tantamount to a statement that "she might be able to return to the shipyards."
 
 IV
 
 20
 Substantial evidence also supports the ALJ's finding that Oldrich did not suffer any loss of wage-earning capacity. A labor market survey conducted on April 25, 1986 showed seven specific jobs that Oldrich could perform with starting salaries of $5.00 per hour, which would not result in a loss of wage-earning capacity. One of the criteria used in identifying the jobs was Oldrich's ability to work within Dr. Kirby's more stringent restrictions.
 
 V
 
 21
 We do not address the merits of Oldrich's argument that the ALJ erred by sua sponte allowing the parties to submit evidence of Oldrich's earnings approximately eight years after the record closed is without merit. Any error would be harmless because the ALJ's conclusion that Oldrich did not suffer any loss of wage-earning capacity was supported by the record without regard to the post-hearing evidence.
 
 
 22
 We also do not address Oldrich's argument that the ALJ erred in finding that her shoulder injury was not caused by her work injury. This issue is moot because we hold that she is not entitled to any disability benefits.
 
 
 23
 PETITION FOR REVIEW DENIED.
 
 
 
 **
 Honorable Rudi M. Brewster, United States District Judge for the Southern District of California, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3