**Jose ALCALA, Petitioner,**

**v.**

**DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR; Pan Pacific Fisheries; State Compensation Insurance Fund, Respondents.**

No. 96–70794.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 2, 1998.

Decided April 13, 1998.

Preston Easley, Law Offices of Preston Easley, San Pedro, California, for appellant-petitioner.

Gary M. Spero, Cerritos, California, for appellees-respondents Pan Pacific Fisheries and State Compensation Insurance Fund.

Before: WALLACE, TROTT, and HAWKINS, Circuit Judges.

TROTT, Circuit Judge:

## OVERVIEW

An Administrative Law Judge denied Appellant's request for benefits pursuant to the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–50 (1994), because he found Appellant to be an excluded "aquaculture worker." *See* 33 U.S.C. § 902(3)(E). The Benefits Review Board (Board) automatically affirmed the ALJ's decision.

Appellant's job duties as a freezer forklift operator fall within the aquaculture worker exception. Aquaculture workers by their status are excluded from the LHWCA's jurisdiction and coverage even if they momentarily or episodically work on the docks. Therefore, the ALJ and Board correctly concluded that Appellant's claim does not fall within the LHWCA's jurisdiction.

Appellant's petition for review is denied.

## BACKGROUND

Jose F. Alcala, Claimant–Appellant, sought LHWCA benefits after he injured his shoulder and back by slipping on ice and fish blood in his employer's freezer warehouse. Appellant was employed by Pan Pacific Fisheries (PPF). PPF is a large cannery that primarily cans tuna fish, but also processes squid, mackerel and pet food.

PPF's facility is situated beside a dock in a harbor at Long Beach, California. The fish comes to the processing plant mainly by truck and only occasionally by ship. Fish delivered by ship would be unloaded by the ship's crew and left in bins on the dock. Only one ship delivered fish in 1991, the year of Appellant's injury.

At the time of his injury, Appellant was a freezer forklift operator at PPF. A freezer forklift operator picks up bins of fish from an ante room, the area located next to the freezer entrance, which are left there by outside forklift operators. The operator then stacks and inventories the fish in the freezer while the fish awaits the next step in processing or canning. Appellant's job was a critical part of PPF's processing and canning operation.

At the administrative hearing, PPF contended that Appellant did not qualify for LHWCA benefits because he did not perform maritime work. PPF claimed Appellant performed non-maritime duties inside its freezer warehouse as evidenced by the special suit he wore at work that was designed to withstand frigid temperatures. Appellant also drove a forklift designed to stack bins of fish high in the freezer. He was paid a different wage from and belonged to a different union than PPF's outside forklift operators.

Appellant did not dispute PPF's contention that his duties required him to work inside the freezer. He did claim, however, that he occasionally moved bins of fish on the dock if there were too few outside drivers. This led to his assertion that some of the duties he performed were maritime in nature, and therefore, his claim was subject to LHWCA jurisdiction despite the explicit aquaculture worker exception.

The ALJ held that Appellant's duties as a freezer forklift operator were part of PPF's

processing and canning operation. He determined this was true even if Appellant occasionally moved bins of fish outside, because the "processing operation began once the fish were deposited into the bins on the dock." The ALJ concluded, "the regulatory definition of 'aquaculture worker' [included] any employee of an employer engaged in fish 'cleaning, processing *or* canning' operations whose duties take place after the employer takes possession of the incoming fish." Because Appellant was subject to California state workers' compensation coverage, the ALJ dismissed Appellant's LHWCA claim. *See* 33 U.S.C. § 902(3)(E) (LHWCA does not apply to aquaculture workers who are subject to state compensation laws).

On appeal, the Board granted automatic affirmance of the ALJ's decision.[1] Appellant petitions this court for review.

## STANDARD OF REVIEW

■■■ The Board "may not substitute its views for those of the ALJ, but instead must accept the ALJ's findings unless they are contrary to the law, irrational, or unsupported by substantial evidence." *King v. Director, OWCP,* 904 F.2d 17, 18 (9th Cir.1990) (quotation and citation omitted). "We review the Board's decision for errors of law and adherence to the substantial evidence standard, and we may affirm on any basis contained in the record." *Cretan v. Bethlehem Steel Corp.,* 1 F.3d 843, 845 (9th Cir.1993) (quotations and citations omitted). The court defers to the Board's interpretation of the LHWCA if it "is reasonable and reflects the underlying policy of the statute." *Todd Shipyards Corp. v. Director, OWCP,* 848 F.2d 125, 126 n. 2 (9th Cir.1988).

## DISCUSSION

### A. History of the Jensen Line and the Aquaculture Exception

Since Congress enacted the LHWCA, courts have struggled to define the line between state workers' compensation and LHWCA jurisdiction. *See Northeast Marine*

Terminal Co. v. Caputo, 432 U.S. 249, 256–65, 97 S.Ct. 2348, 2353–58, 53 L.Ed.2d 320 (1977) (discussing history of the LHWCA). This line of jurisdiction is referred to as the "Jensen line." *See Southern Pac. Co. v. Jensen,* 244 U.S. 205, 217–18, 37 S.Ct. 524, 529–30, 61 L.Ed. 1086 (1917) (refusing to allow States to extend workers' compensation benefits to maritime workers injured on the seaward side of the pier). It turned out that the LHWCA was harder to apply than Congress had expected. Jurisdiction often still depended on whether the claimant was hurt on the landward or seaward side of the Jensen line, and amphibious workers literally walked in and out of coverage as they performed their various duties. *See Caputo,* 432 U.S. at 256–65, 97 S.Ct. at 2353–58. Frustrated by inconsistent LHWCA decisions, Congress moved the Jensen line shoreward in order to offer more uniform coverage to amphibious maritime workers. *See id.* at 263–64, 97 S.Ct. at 2356–57 However, Congress's shoreward shift of the Jensen line resulted in broader LHWCA jurisdiction than it had intended. *Id.* at 272–73, 97 S.Ct. at 2361–62. Thus, in 1984, Congress attempted to tighten the Jensen line by identifying and excluding workers "who, although by circumstance happened to work on or adjacent to waters, lacked a sufficient nexus to maritime navigation and commerce." S.Rep. No. 98–81, at 24–25 (1983). Congress accomplished this change by redefining the statute's definition of "employee." LHWCA Amendments of 1984, Pub.L. No. 98–426, 98 Stat. 1639, 1655, § 28(c) (codified in relevant part at 33 U.S.C. § 902(3)). Among other changes, the revised definition of "employee" excluded aquaculture workers subject to workers' compensation. *See id.*

The revised statute does not define the term "aquaculture worker." However, the term is defined by the Code of Federal Regulations as:

> those employed by commercial enterprises involved in the controlled cultivation and harvest of aquatic plants and animals, including the cleaning, processing or canning

---

1. Affirmance was granted pursuant to the Omnibus Consolidated Recisions and Appropriations Act of 1996(Act), Pub.L. No. 104–134, 110 Stat.

321 (codified as amended in scattered sections of 5–48 U.S.C.). The Act required automatic affirmance of all appeals over one year old. *Id.*

of fish and fish products, the cultivation and harvesting of shellfish, and the controlled growing and harvesting of other aquatic species.

20 C.F.R. § 701.301(a)(12)(iii)(E) (1994). The exclusion of aquaculture workers applies even if the claimant is injured over navigable waters. *Id.* § 701.301(a)(12)(iii).

■ Appellant argues the ALJ and Board erred by concluding that he was an excluded aquaculture worker and denying LHWCA jurisdiction for his claim. The outcome of his petition for review depends entirely on where Congress drew the Jensen line in relation to his duties and to the aquaculture worker exception.

**B. *Ljubic* and Maritime Duties**

Appellant argues that claimants doing both aquaculture work and maritime work qualify for LHWCA coverage, because spending some time in longshoring operations is enough to confer LHWCA jurisdiction. *Caputo*, 432 U.S. at 273, 97 S.Ct. at 2362 (claimant spending "at least some of his time in indisputably longshoring operations" is covered). He contends that the ALJ and the Board erred by rejecting the legal conclusions set forth in *Ljubic v. United Food Processors*, 27 BRBS 112 (1993), *aff'd*, Nos. 93–1949 and 93–2255, 1996 WL 582352, at *3 (BRB Sept. 11, 1996), because the Board in *Ljubic* recognized that even excluded aquaculture workers are covered under the LHWCA if they engage in occasional maritime duties.

In *Ljubic*, the claimant was a maintenance supervisor and mechanic. 27 BRBS at 114. The claimant spent forty percent of his time doing maintenance work on structures and equipment used on the docks for unloading fish. *See id.* His other duties involved the repair and maintenance of his employer's cannery. *See id.* The ALJ held the claimant was not an excluded aquaculture worker. *See id.* at 118. The ALJ reasoned that a cannery worker who regularly engaged in traditional maritime duties as an expected part of his job would be exposed to the risk of walking in and out of coverage if the exception applied. *See id.* at 117. The Board held the ALJ had properly focused on the claimant's duties when assessing the applicability of the aquaculture exclusion. *Ljubic*, 1996 WL 582352, at *3; *see also Coloma v. Director, OWCP*, 897 F.2d 394, 397–400 (9th Cir.1990) (maritime work consists of duties essential to the overall loading and unloading of vessels). Because Ljubic's traditional maritime duties were a regular, expected part of his duties, the Board affirmed the ALJ's decision that the aquaculture exception did not apply. *Ljubic*, 1996 WL 582352, at *3; *cf. Loggins v. Newport Shrimp*, 20 BRBS 814, 818 (1988) (evidence not sufficient to conclude whether claimant's maritime duties were regular enough to take him out of aquaculture worker exception).

■ Appellant had significantly fewer maritime duties than the claimant in *Ljubic*. He was hired to move fish from the ante room to the freezer in order to freeze it as quickly as possible. All his duties, whether inside or outside, revolved around that task. Considering PPF's expectation that Appellant would only work in the freezer and the testimony that only one ship delivered fish in 1991, it appears Appellant's outside work was infrequent or episodic and entirely discretionary in nature. Thus, contrary to Appellant's assertions, his additional maritime work, if any, did not confer LHWCA jurisdiction over his claim. *See Dorris v. Director, OWCP*, 808 F.2d 1362, 1365 (9th Cir.1987) (truckdriver's occasional maritime duties were too "momentary and episodic" to qualify him for maritime status); *Lewis v. Sunnen Crane Serv., Inc.*, 31 BRBS 34, 40 (1997) (*regular* maritime duties as infrequent as 3.6% to 8.5% of claimant's time may confer jurisdiction, but claimant's duties can still be so momentary or episodic that LHWCA jurisdiction will not attach). Accordingly, we hold that aquaculture workers by their status, are excluded from LHWCA jurisdiction even though they may momentarily or episodically work on docks doing maritime tasks.

**C. Cultivated or Harvested Fish**

The ALJ held that Appellant did not have to clean, process or can cultivated or harvested fish in order to be excluded. *See* 20 C.F.R. § 701.301(a)(12)(iii)(E) (discussing

cleaning, processing and canning fish but also discussing cultivated and harvested fish). Appellant contends the ALJ's interpretation and the Board's affirmance are founded on an erroneous interpretation of the statute's definition of "aquaculture worker." We disagree.

■ We defer to the Board's interpretation of the LHWCA so long as it is reasonable and reflects the LHWCA's underlying purpose. *See National Steel & Shipbuilding Co. v. Dep't of Labor,* 606 F.2d 875, 880 (9th Cir.1979). The ALJ's and the Board's interpretation of the definition is reasonable. The definition could be read to include aquaculture workers who clean, process, or can *any* fish. Furthermore, the interpretation reflects Congress's intent to exclude claimants who merely work next to navigable waters but do not regular perform maritime duties.[2] In addition, this interpretation of the exclusion is meant to harmonize prior Board interpretations of the LHWCA. *See National Steel,* 606 F.2d at 880 (we defer to Board interpretations if reasonable).[3] Therefore, the ALJ and the Board did not err in their interpretation of the aquaculture worker exclusion. A worker need not be engaged in canning or processing cultivated or harvested fish to be considered an excluded aquaculture worker.

### D. Point of Rest Theory

Finally, Appellant contends the ALJ improperly relied on the point of rest theory, which the Supreme Court rejected in *Caputo.* *See Caputo,* 432 U.S. at 275–78, 97 S.Ct. at 2363–65 (rejecting the notion that LHWCA jurisdiction ceases after the point at which cargo comes to rest). Appellant argues the ALJ's finding that PPF's processing operation began once it took possession of the incoming fish is erroneously based on the point of rest theory. We disagree. The ALJ's decision does not rely on the point of rest theory. Instead, the ALJ's finding is merely a recognition of the steps in PPF's fish processing and canning operation. The first step, freezing the fish quickly, includes all actions Appellant undertook to get the fish from the dock to the freezer as rapidly as possible. In addition, unlike the situation discussed in *Caputo,* Appellant was not engaged in the interim steps of moving cargo between ship and land transportation.[4] *See Lewis,* 31 BRBS at 36 (discussing *Caputo,* 432 U.S. at 275–78, 97 S.Ct. at 2363–65). Accordingly, the ALJ and the Board did not err by relying on the point of rest theory.

### CONCLUSION

Appellant has failed to meet his burden by establishing that LHWCA jurisdiction applies to his claim. *See Loggins,* 20 BRBS at 816 (Appellant has the burden of proving he comes under the LHWCA's jurisdiction). The ALJ could have rationally concluded Appellant's duties were part of PPF's fish processing and canning operation. The decision was supported by substantial evidence regarding the description and frequency of Appellant's regular expected duties. The ALJ and the Board did not err by relying on

2. "The consensus among the committee members was to reaffirm the purposes of the 1972 jurisdictional changes, ... [and identify and exclude those workers] who, although by circumstance happened to work on or adjacent to waters, lacked a sufficient nexus to maritime navigation and commerce." S.Rep. No. 98–81, at 24–25. The House of Representative Conference Report also states:

> The conferees understand that, to date, the definition of maritime employment has never been interpreted to mean the cleaning, processing or canning of fish and fish products. But to foreclose any future problems of interpretation, the term 'aquaculture operations' should be understood as including such activities.

H.R. Conf. Rep. No. 98–1027, at 23 (1984).

3. The Board has interpreted the definition of "aquaculture worker" inconsistently. In *Ljubic,* the ALJ discussed the definition of "aquaculture worker" and decided it could be read to include only those workers who worked with cultivated fish *or* to include those who engaged in the processing of *any* fish. 27 BRBS at 117–18, *aff'd,* 1996 WL 582352. On the other hand, in *Barnard v. Zapata Haynie Corp.,* 23 BRBS 267, 272 (1990), *aff'd,* 933 F.2d 256 (4th Cir.1991), the Board held that the claimant was not an aquaculture worker because the fish he spotted from an airplane were not cultivated or harvested.

4. At most, the fish were moved 300 yards to PPF's own processing building when they were needed for the second step in canning or processing.

erroneous legal conclusions concerning the point of rest theory, nor did they rely on an erroneous interpretation of the LHWCA that was unreasonable, contrary to a fair reading of prior Board interpretations, or unreflective of the purpose underlying the 1984 Amendments to the LHWCA. Accordingly, Appellant's claim does not come under the jurisdiction of the LHWCA. His petition for review is DENIED.