KEVIN KEENAN, Petitioner,

v.

DIRECTOR FOR the BENEFITS RE-VIEW BOARD; Director, Office of Workers Compensation Programs; U.S. Department of Labor; Eagle Marine Services, Respondents.

No. 03–70442.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 2004.

Filed Dec. 21, 2004.

James M. McAdams, Pierry, Moorhead, McAdams & Shenoi, LLP, Wilmington, CA, for the petitioner.

Cindy Gutierrez (Argued), Daniel F. Valenzuela (On the Briefs), Samuelson, Gonzalez, Valenzuela & Brown, San Pedro, CA, for the respondents.

Before: GOODWIN, FISHER, and TALLMAN, Circuit Judges.

GOODWIN, Circuit Judge.

This appeal presents the following questions: (1) whether petitioner's shoulder impairment should be compensated as a scheduled disability of the arm under 33 U.S.C. § 908(c)(1); (2) in the alternative, whether he is entitled to unscheduled compensation under 33 U.S.C. § 908(c)(21) on the ground that his shoulder injury prevented him from accepting a more lucrative foreman's position; and (3) whether, if neither form of compensation is granted, petitioner is entitled to a *de minimis* award under 33 U.S.C. § 908(c)(21). We hold that petitioner is entitled to neither scheduled nor unscheduled recovery, but that he is entitled to a *de minimis* award to pre serve the possibility of a modified award should his earnings fall below pre-injury levels.

## I. FACTS

Kevin Keenan, then employed as a longshoreman for Eagle Marine Services, suffered a right shoulder injury on January 21, 1988. He underwent two surgeries, experiencing a period 17131 of temporary total disability and reaching maximum medical improvement on November 28, 1990. Residual symptoms and partial impairment persist, requiring Keenan to desist from heavy or repetitive overhead work and making it difficult for him to perform strength related activities, especially above chest level. Still, Keenan initially returned to work as a longshoreman, working under medical restrictions, until he was able to secure a mostly clerical position with Eagle, which he continues to hold. Keenan earns significantly more in his new position as a Marine Clerk than he did as a longshoreman, and has no physical trouble performing the job. None of these facts—the nature and cause of the injury,

the subsequent periods of disability and medical treatment, Keenan's employment history and earnings since the injury—are presently in dispute. Indeed, the only fact that remains in dispute is the probability of future changes in Keenan's economic position.

## II. ADMINISTRATIVE HISTORY

The dispute arose with respect to Keenan's claim for continuing disability benefits beyond the November 28, 1990 maximum medical improvement point. Keenan argues that he is entitled to receive scheduled benefits from Eagle for permanent partial disability to his arm under 33 U.S.C. § 908(c)(1), or alternatively, that he is entitled to unscheduled benefits for permanent partial disability as defined by his economic losses under 33 U.S.C. § 908(c)(21). In her original decision, the Administrative Law Judge ("ALJ") determined that Keenan's shoulder injury was unscheduled and thus compensable only under 33 U.S.C. § 908(c)(21). She then found that since Keenan suffered no loss in post-injury earning capacity, he was not entitled to unscheduled benefits either. Finally, she awarded Keenan a de minimis award of $1/week, as well as medical benefits pursuant to 33 U.S.C. § 907 and attorneys' fees and expenses.

Both parties appealed to the Benefits Review Board ("the Board"). The Board affirmed all of the ALJ's determinations, save the de minimis award, remanding that decision for reconsideration under the intervening decision in Rambo v. Director, OWCP, 81 F.3d 840 (9th Cir.1996). In its order remanding on the merits, the Board vacated the attorneys' fee award and asked the ALJ to reconsider the issue in connection with her decision on the de minimis award. During the time the Board's decision was on appeal to the Ninth Circuit, which dismissed the petition for lack of a final appealable order, the Supreme Court had again spoken in Ram-

bo, in a decision styled Metropolitan Stevedore Company v. Rambo, 521 U.S. 121, 117 S.Ct. 1953, 138 L.Ed.2d 327 (1997) ("Rambo II "). Before the ALJ on remand, Keenan raised a new basis for his § 908(c)(21) claim, namely, that he had been forced to pass up a recent foreman promotion due to his disability. In her second opinion, the ALJ denied this claim as well as the renewed claim for the de minimis award. In light of these decisions, the ALJ also declined to reinstate the attorneys' fee award. The Board affirmed on each ground. Keenan timely appeals.

## III. DISCUSSION

The Longshore and Harbor Workers' Compensation Act, 33 U.S.C. 901 et seq., provides for compensation for permanent partial disabilities resulting from both "scheduled" and "unscheduled" injuries. Disabilities resulting from scheduled injuries are compensated at the rate of 2/3 of average weekly wages at the time of injury for a specified number of weeks, regardless of post-injury earning capacity. Meanwhile, disabilities resulting from unscheduled injuries are compensated at the rate of 2/3 of the difference between average weekly wages at the time of injury and post-injury earning capacity, for as long as the disability should last, which is to say in the case of permanent disabilities, indefinitely. The general principle is that the Act should be construed broadly and liberally in light of its purpose of compensating disabled workers, eschewing interpretive nitpicking at the expense of the injured employee. Voris v. Eikel, 346 U.S. 328, 74 S.Ct. 88, 98 L.Ed. 5 (1953); see also Potomac Electric Power Co. v. Director, OWCP, 449 U.S. 268, 281, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980) ("Pepco ") ("Respondents correctly observe that prior decisions of this Court require that the

LHWCA be liberally construed in order to effectuate its remedial purposes.").

However, one form of recovery invokes a mechanical formula and the other employs a fact-dependent test; thus, the rule that is the more beneficent in one case may turn out to be less beneficent in another. Indeed, the Supreme Court has acknowledged that the interaction of the schedule and the economic loss formula can produce results that are "incongruous" and even "unfair," and that this in turn poses a dilemma for the courts. *Pepco,* 449 U.S. at 282–283, 101 S.Ct. 509 (1980). Because his post-injury earning capacity exceeds his pre-injury wages, Keenan is obviously benefitted by characterizing his injury as scheduled. Yet there are many cases in which present earnings are sufficiently depressed below pre-injury levels to cause the worker to benefit from characterizing his injury as *un* scheduled. The interpretive principle of beneficence is therefore of little help in resolving statutory ambiguities to decide whether a shoulder injury should be treated as scheduled or unscheduled.

■ We review the Board's decision "for errors of law and adherence to the substantial evidence standard," and should "respect the Board's interpretation of the statute where that interpretation is reasonable and reflects the policy underlying the statute." *Sestich v. Long Beach Container Terminal,* 289 F.3d 1157, 1159 (9th Cir.2002) (citing *Rambo v. Dir., OWCP,* 81 F.3d 840, 842 (9th Cir.1996)) (internal quotations omitted).

*1. Benefits to compensate a scheduled injury under 33 U.S.C. § 908(c)(1)*

■ The question whether Keenan is entitled to scheduled recovery turns on whether his injury qualifies as a partial loss of an arm under § 908(c)(1). The Act provides:

(c) Permanent partial disability: In case of disability partial in character but permanent in quality the compensation shall be 66 2/3 per centum of the average weekly wages, which shall be in addition to compensation for temporary total disability or temporary partial disability paid in accordance with subdivision (b) or subdivision (e) of this section, respectively, and shall be paid to the employee, as follows:

(1) Arm lost, three hundred and twelve weeks' compensation.

. . .

33 U.S.C. § 908. Keenan makes two arguments in support of his claim that his injury should be compensated under § 908(c)(1). First, he argues that the resultant impairment in the use of his arm below the shoulder entitles him to recovery under the meaning of "arm lost." Second, he argues that the shoulder injury itself qualifies as an injury to the arm, insofar as the shoulder is a part of the arm within the meaning of the Act.

As to the first argument, it is relatively well-settled, despite some ambiguity in the statutory language, that an injury to Body Part X resulting in a functional impairment to Body Part Y will be classified according to X and not according to Y under the schedule. Our Circuit was the first to articulate this "situs of the injury" rule, in *Long v. Director, OWCP,* 767 F.2d 1578 (9th Cir.1985), which construed the Act to mandate recovery under § 908(c)(21) rather than under the schedule "for impairments to limbs caused by an accidental injury to a part of the body not specified in the schedule." 767 F.2d at 1582. Since then, the First and Fifth Circuits have both followed *Long,* while no other circuit has taken a contravening approach. *See Barker v. U.S. Dept. of Labor,* 138 F.3d 431, 434–435 (1st Cir.1998) (holding that while "the language of sec-

tion 908(c) ... may admit of differing interpretations," an injury to a body part not included in the schedule must be compensated as an unscheduled injury, "no matter that the petitioner's symptoms extend beyond the injured area"); *Pool Co. v. Director, OWCP*, 206 F.3d 543, 547 (5th Cir. 2000) (endorsing "the *Long* court" in holding "that an employee who suffers an injury to an unscheduled portion of the body ... that impairs a scheduled portion ... may not receive benefits under the § 8 schedule.").

The situs of the injury rule establishes that Keenan cannot recover for his shoulder injury under the schedule on the basis of resultant impairment to his lower arm. However, it does not answer the question whether the shoulder should be considered part of the arm. Keenan asks us to reach this question here.

■ Keenan's second assertion, that the shoulder is a part of the arm under the meaning of the Act, effectively requires this Court to reject a line of cases holding that a shoulder injury is unscheduled. No Ninth Circuit decision has explicitly held that the shoulder is, or is not, part of the arm for the purposes of § 908(c)(1). Other circuits that have considered how to classify shoulder injuries under the Act have held that they are *per se* unscheduled, without deciding that the shoulder is not a part of the arm. *See Pool*, 206 F.3d at 545 (affirming the ALJ's determination that a shoulder injury "does not come within the Section 8 Schedule") (internal quotations omitted); *Barker*, 138 F.3d at 437 (holding that injuries to the neck and shoulder are unscheduled). This also seems to be the general practice of the Board. *See Grimes v. Exxon*, 14 BRBS 573, 576 (BRB 1981) ("Since claim-

ant's injury, in the instant case, is to his shoulder, a part of the body which is plainly not listed in the schedule, compensation for permanent partial disability pursuant to Section 8(c)(21) is affirmed.").[1] While none of these decisions squarely state that the shoulder is not part of the arm, the proposition is plainly implicit in their conclusions. A survey of relevant medical sources reveals at best an ambiguity in the nomenclature; a mere lexical uncertainty, however, is not sufficiently compelling to reject the clear rule adopted by the Board in *Grimes* and endorsed by our sister circuits. We decline to do so in this case.

2. *Benefits to compensate an unscheduled injury under 33 U.S.C. § 908(c)(21)*

■ *Keenan argues that he should collect § 908(c)(21) benefits* according to a hypothetical damages formula, under which the employer must compensate him for the difference between his actual economic position and his hypothetical economic position, which he would have enjoyed but for the injury. However, the statutory formula contemplates wages at time of injury, rather than projected present wages, as the relevant baseline for comparison to actual present earning capacity. 33 U.S.C. § 908(c)(21). Our Circuit recently made explicit this relatively straightforward reading of the statute, ratifying the rule expressed in a number of earlier Board decisions, by holding that under the Act:

> disability is not defined, as it would be under the tort system, as the inability to earn hypothetical wages that the worker could have earned if he had not been injured. Rather, disability is defined

---

1. In *Grimes,* the employer sought to classify the employee's injury as scheduled, since scheduled recovery would have been substantially less than the unscheduled recovery the Board ordered, thus illustrating the "incongruous" interaction of the sections of the Act discussed *supra.*

under the Act as the difference between the employee's pre-injury average weekly wages and his post-injury wage-earning capacity.

*Sestich,* 289 F.3d at 1160 (internal quotations omitted). For an unscheduled injury, therefore, the employer is obligated to compensate the worker only up to the level of his wages at time of injury, as the Board and the ALJ correctly held.

Keenan does not succeed in distinguishing this case by asserting that his foregone opportunity, unlike Sestich's, is "actual" and not "theoretical." Indeed, the *Sestich* court made quite clear that "we will not quarrel with Sestich's factual assumption." *Sestich,* 289 F.3d at 1160. The point of *Sestich* was that even if the petitioner would recover under a hypothetical damages formula, that formula is not the one contemplated by the Act. It is undisputed that Keenan's actual present wages are significantly higher than his pre-injury wages, and he makes no argument that they do not fairly and reasonably represent his present earning capacity. Therefore, he is not entitled to recovery under § 908(c)(21).

*3. De minimis* award under 33 U.S.C. § 908(c)(21)

The Supreme Court, in *Rambo II,* has clearly endorsed the concept of nominal compensation in cases where the worker suffers a permanent physical disability, but has not yet suffered an economic loss, as the only means of honoring

> the Act's mandate to account for the future effects of disability in fashioning an award, since those effects would not be reflected in the current award and the 1–year statute of limitations for modification after denial of compensation would foreclose responding to such effects on a wait-and-see basis as they might arise.

521 U.S. at 134, 117 S.Ct. 1953. The Court also clarified that "a disability whose substantial [economic] effects are only potential is nonetheless a present disability, albeit a presently nominal one." *Id.* at 135, 117 S.Ct. 1953. The mechanism of nominal compensation thus neatly reconciles two statutory directives: (1) that awards must account for future economic effects, even potential ones; and (2) that compensable "disabilities" under the Act are economic, not physical, in nature. In the words of the Court, "[i]t is simply reasonable and in the interest of justice (to use the language of § 8(h)) to reflect merely nominal current disability with a correspondingly nominal award." *Id.* (internal quotations omitted).

■■ The test for nominal compensation is that "there is significant potential that the injury will cause diminished capacity under future conditions" in cases where current earnings exceed pre-injury earnings, thus presently precluding § 908(c)(21) recovery. 521 U.S. at 138, 117 S.Ct. 1953. While the possibility of future decline in wages is "not to be assumed *pro forma* as an administrative convenience in the run of cases," the *Rambo II* test is a liberal one—as befits a conservative award that has no present effect on the parties' interests but simply embodies a "wait-and-see approach to provide for the future effects." *Id.* at 139, 135, 117 S.Ct. 1953. The existence of a permanent partial disability, moreover, is a crucial factor in the inquiry. The Court held that because Rambo's physical condition had not improved to the point of full recovery, the possibility of future economic loss had been sufficiently raised.

> Because there is no evidence in the record of the modification proceedings showing that Rambo's physical condition has improved to the point of full recovery, the parties' earlier stipulation of permanent partial disability at least rais-

es the possibility that Rambo's ability to earn will decline in the event he loses his current employment as a crane operator. The ALJ's order altogether terminating benefits must therefore be vacated ... *Id.* at 140, 117 S.Ct. 1953. Keenan's position is precisely analogous to Rambo's. The Court could not have made it clearer that present employment in which the worker is able to avoid using the impaired body part, far from removing the basis for a *de minimis* award, is exactly the circumstance for which nominal compensation is designed.

Yet, the ALJ's second decision contravened just this instruction, by concluding that Keenan's few additional years of employment as a Marine Clerk obviated any need to conduct a *de minimis* inquiry. If there is a chance of future changed circumstances which, together with the continuing effects of Keenan's injury, create a "significant potential" of future depressed earning capacity, then Keenan is entitled to the possibility of a future modified award under *Rambo II.* That eventuality would come about were Keenan to lose his clerical position due to changed market conditions and find himself on the open market for a longshoreman job, which his physical impairment very possibly would not allow him to perform. This concern, indeed, was acknowledged by the ALJ herself in her original decision, which found that changing market conditions, free trade concerns, and other factors created sufficient doubt to justify a *de minimis* award. While Keenan was not employed as a Marine Clerk at that time, many of the findings—e.g., the likely future market share of the Port, Keenan's work restrictions, and permanent partial disability involving shoulder and arm—apply equally to the present state of affairs. In fact, the ALJ did not withdraw any of her earlier findings; she found only that the additional passage of time outweighed them. However, unless the passage of time has

directly removed one of the relevant factors—for example, if some of Keenan's work restrictions were removed, or if market conditions changed for the better—the logic of the *Rambo II* test dictates that the mere fact that Keenan is earning above pre-injury levels cannot obviate the basis of the *de minimis* award.

Were Keenan to now lose his clerical position, at least a decade will have passed since he worked as a longshore man, further increasing the chances of economic loss. Most importantly, it is factually uncontroverted that Keenan's injury is both permanent and substantial. The absence of economic loss thus far does not reflect an underlying absence of loss in physical function. The significance of the injury is a substantial factor in the "significant potential of diminished capacity" test articulated by *Rambo II.* For the foregoing reasons, we elect to follow the conservative "wait and see" approach recommended by *Rambo II* and reverse the Board's denial of the *de minimis* award.

## IV. CONCLUSION

We affirm the Board's denial of scheduled and unscheduled benefits and reverse the denial of the *de minimis* award, remanding for a determination of the relevant facts under *Rambo II.* In light of this holding, we also reverse the Board's denial of attorneys' fees and remand to the ALJ to resolve the fee question in accordance with her reconsideration of the *de minimis* award.

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

TALLMAN, Circuit Judge, concurring in part and dissenting in part.

I dissent solely from the court's reversal of the Benefits Review Board's ("Board") appropriate denial of a *de minimis* award. In granting a *de minimis* award to Keen-

an, the court adopts a standard so low that it is difficult to imagine an applicant who will not qualify for compensation if at some point in his prior employment he sustained an injury which might impair his ability to return to that position in the future. Why stop there? The same logic compels the conclusion, rejected by the entire panel, that Keenan should also be compensated because his shoulder injury precluded him from advancement to a foreman's position.

Courts review with deference the Board's decision for "errors of law and adherence to the substantial evidence standard." *Deweert v. Stevedoring Servs. of America,* 272 F.3d 1241, 1243 (9th Cir. 2001) (internal quotation and citation omitted). The Board "must accept the ALJ's findings unless they are contrary to the law, irrational, or unsupported by substantial evidence." *Id.* (internal quotation and citation omitted). The findings here withstand that deferential standard of review.

Under *Metropolitan Stevedore Co. v. Rambo,* 521 U.S. 121, 117 S.Ct. 1953, 138 L.Ed.2d 327 (1997) (*Rambo II*), an injured worker is "entitled to nominal compensation when his work-related injury has not diminished his present wage-earning capacity under current circumstances, but there is a significant potential that the injury will cause diminished capacity under future conditions." 521 U.S. at 138, 117 S.Ct. 1953. The petitioner has the burden of showing by a preponderance of the evidence that the "odds are significant that his wage-earning capacity will fall below his pre-injury wages at some point in the future." *Id.* at 139, 117 S.Ct. 1953. I emphasize that there must be a showing of "significant potential" that an injury will cause a claimant's wages to fall, not just below his current wages, but below *pre-injury* wages. Furthermore, not only must a claimant show that his income could fall below pre-injury wages for some reason, but that it is the *injury* itself that

will cause the diminished wage-earning capacity. *See id.* at 138, 117 S.Ct. 1953. A possible change in market conditions resulting in future layoffs or other externalities alone, such as capital improvements to move more cargo with fewer longshoremen, would be insufficient to justify *de minimis* benefits.

The ALJ considered Keenan's disability and determined that he did not show a significant possibility of future loss of wage-earning capacity, finding that:

> With his years of union service and seniority, his continuous, stable and varied longshore jobs over the years, [Keenan] is well-positioned as to future longshore/stevedore and market conditions so that on overall consideration of the evidence on the injury, his limitations, his education, age, experience and future factors which may affect his capacity to earn wages in his disabled condition, it cannot be held there is a significant possibility of a future wage capacity loss or diminished earnings capacity.

The Board also specifically noted that the ALJ found that Keenan's "current physical restrictions are only prophylactic in nature and that he has not seen a doctor for his shoulder injury since 1990." These findings are reasonable and amply supported by evidence in the record.

The unrefuted facts before the court are that Keenan earns significantly more money in his post-injury job than he did in his pre-injury job; he has had over ten years of steady post-injury work since reaching his maximum recovery; he is protected by union seniority; he has a college degree; and he has had no injury-related incidents since his injury. Other than the undisputed fact that the injury occurred and that Keenan testified that "it gets worse as time goes by," there is no significant evidence of any potential for future diminished earning capacity. Keenan has there-

fore failed to meet his preponderance of the evidence burden and we should defer to the Board's decision.

The approach adopted here by the court ignores in substance the Supreme Court's express language "emphasiz[ing] that the probability of a future decline is a matter of proof; it is not to be assumed *pro forma* as an administrative convenience in the run of cases." *Rambo II*, 521 U.S. at 139, 117 S.Ct. 1953. First, the court here characterizes the "significant potential" test as a "liberal" test. However, the Supreme Court in *Rambo II* did not state that the test was liberal and did not actually grant a *de minimis* award. Instead, the Court stated that "permanent partial disability at least raises the possibility" of future loss of earning ability and remanded to the ALJ to consider in the first instance whether there was a significant possibility of future decline in wage-earning capacity. *Rambo II*, 521 U.S. at 140–41, 117 S.Ct. 1953 (vacating the Ninth Circuit's judgment that "direct[ed] entry of a nominal award based on its own appraisal of the evidence" instead of remanding to the ALJ for further findings of fact). Here, the ALJ has already conducted that appraisal and the remand directed by the court's disposition repeats the error we made in *Rambo II*.

Second, the court implies that *Rambo II* requires that any one suffering from permanent partial disability necessarily qualifies for a *de minimis* award. Maj. Op. at 1046 ("The existence of a permanent partial disability, moreover, is a crucial factor in the inquiry."). I agree that a permanent partial disability is crucial because a claimant is not even *eligible* for § 908(c)(21) benefits unless they have such a disability. I do not agree, however, that such a disability is also a "crucial factor" in determining whether there is a "significant potential" for future diminished wage-earning capacity—the disability is the prerequisite to trigger the "significant poten-

tial" inquiry in the first place. There must be factors that contribute to a showing of "significant potential" for the court to consider other than just the existence of the injury itself. But instead of deferring to the ALJ's consideration of these other factors, the court here implies that a claimant is presumed to meet the "significant potential" test if he shows that he has a permanent partial disability.

Third, I do not agree that "it is factually uncontroverted that Keenan's injury is both permanent and substantial." Maj. Op. at 1047. The record is silent as to how substantial Keenan's injury and his loss of physical function is at this time. The ALJ and the Board reasonably determined that his current physical restrictions were prophylactic and that he had not seen a doctor for his injury in over a decade. The ALJ correctly found that Keenan's injury was "not a physical impairment which standing alone is significant" and took this into account when determining that he did not qualify for a *de minimis* benefit. Keenan has introduced no evidence to refute these findings and it is not our place to make alternative findings when no evidence was adduced to support them.

Perhaps in an effort to supplement Keenan's weak showing, the court points out that the loss of physical function is not adequately reflected in the absence of economic loss. Maj. Op. at 1047. The court may understandably wish to compensate Keenan for the physical injury itself but the Longshore and Harbor Workers' Compensation Act is not a remedy for "physical injury as such, but for economic harm to the injured worker from decreased ability to earn wages." *Rambo II*, 521 U.S. at 126, 117 S.Ct. 1953. The statutory scheme requires him to suffer economic harm or to at least show significant potential of economic harm in order to recover compensation. The "wait and see" approach is only

appropriate when a claimant has made a proper showing of potential economic harm; it should not be based simply on sympathy for an uncompensated physical harm. If that were the standard, all claimants would qualify for *de minimis* benefits, a position the Supreme Court has already rejected by emphasizing that *de minimis* benefits should not be granted *pro forma. See Rambo II*, 521 U.S. at 139, 117 S.Ct. 1953. Moreover, Congress has certainly not embraced the *de facto* insurance plan now mandated by the court's holding based solely upon a job-related injury.

The Board determination is supported by substantial evidence, is not contrary to the law, and we should defer to its findings. Keenan has failed to meet his burden of showing substantial potential of his income falling below his pre-injury wages on the basis of his old injury. I respectfully dissent from the court's unwillingness to affirm in its entirety the Board's denial of Keenan's claims.