**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSEPH PETITT,

*Petitioner*,

v.

SAUSE BROTHERS; SEABRIGHT
INSURANCE COMPANY; DIRECTOR,
OFFICE OF WORKERS'
COMPENSATION PROGRAM,

*Respondents*.

No. 12-70740

BRB No.
11-0351

OPINION

On Petition for Review of an Order of the
Benefits Review Board

Argued and Submitted
May 8, 2013—Portland, Oregon

Filed September 20, 2013

Before: Alfred T. Goodwin, Stephen Reinhardt,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz

## SUMMARY[*]

**Longshore and Harbor Workers' Compensation Act**

The panel granted a petition for review of a decision of the Benefits Review Board awarding benefits to petitioner under the Longshore and Harbor Workers Compensation Act.

The panel held that under the Longshore Act, scheduled wage increases given by a non-union employer to all employees in a certain class based solely upon seniority were a general increase in wages and did not increase a claimant's wage-earning capacity. The panel concluded that petitioner's quarterly "seniority raises" were more akin to a general wage increase than to a merits-based raise in wages, and therefore should not be calculated into his wage-earning capacity. The panel remanded to the agency to recalculate petitioner's partial disability benefits.

## COUNSEL

Charles Robinowitz (argued), Portland, Oregon, for Petitioner.

Norman Cole (argued), Sather, Byerly & Holloway, LLP, Portland, Oregon, for Respondents.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

HURWITZ, Circuit Judge:

The question presented is whether, under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), scheduled wage increases unrelated to the merits of a worker's performance constitute an increase in the worker's wage-earning capacity or merely a general increase in wages. We hold that they are a general increase.

**I.**

Joseph Petitt injured his back in 2003 while earning $15 per hour as a welder for Sause Brothers ("Sause"). After undergoing two surgeries, Petitt briefly returned to his job, but, physically unable to continue, left Sause at the end of 2004. Sause then began paying Petitt permanent total disability benefits under the LHWCA, 33 U.S.C. §§ 901–950.

Three years later, Petitt began working as an electronics assembler at K&K Sound Systems ("K&K"), earning $7.80 per hour. K&K provides all production and clerical employees, including assemblers, an automatic $0.25 per hour raise every three months until their wages reach $13.50 per hour.

When Petitt began work at K&K, Sause began paying him only permanent partial disability benefits based on his starting salary. Sause periodically reduced those benefits to reflect each quarterly increase. Petitt objected, claiming that Sause incorrectly factored the quarterly raises into the determination of his benefit.

Under the LHWCA, "'[d]isability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C. § 902(10). A disabled employee is entitled to "66 ⅔ per centum of the difference between the average weekly wages of the employee and the employee's wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of partial disability." 33 U.S.C. § 908(c)(21). Section 910(a)–(c) provides three formulas for determining a claimant's average weekly wage. Wage-earning capacity of a partially disabled employee

> shall be determined by his actual earnings if such actual earnings fairly and reasonably represent his wage-earning capacity: *Provided, however*, That if the employee has no actual earnings or his actual earnings do not fairly and reasonably represent his wage-earning capacity, the deputy commissioner may, in the interest of justice, fix such wage-earning capacity as shall be reasonable, having due regard to the nature of his injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future.

33 U.S.C. § 908(h).

Because the parties stipulated to Petitt's average weekly wage at the time of his injury, this appeal hinges on the

proper calculation of wage-earning capacity. After an evidentiary hearing, an administrative law judge ("ALJ") found that Petitt's "pay increases after the date of injury are reflective of his wage-earning capacity and shall be used to calculate his disability payments." The Benefits Review Board affirmed. Petitt filed a timely petition for review; we have jurisdiction pursuant to 33 U.S.C. § 921(c).

We review Benefits Review Board decisions "'for errors of law and for adherence to the substantial evidence standard.'" *Gen. Constr. Co. v. Castro*, 401 F.3d 963, 965 (9th Cir. 2005) (quoting *Alcala v. Dir., OWCP*, 141 F.3d 942, 944 (9th Cir. 1998)). "The Board's interpretation of the LHWCA is a question of law reviewed de novo and is not entitled to any special deference." *Stevedoring Servs. of Am. v. Price*, 382 F.3d 878, 883 (9th Cir. 2004).

## II.

"The objective in determining wage-earning capacity 'is to determine the wage that would have been paid in the open market under normal employment conditions to the claimant as injured.'" *Deweert v. Stevedoring Servs. of Am.*, 272 F.3d 1241, 1248 (9th Cir. 2001) (quoting *Long v. Dir., OWCP*, 767 F.2d 1578, 1582 (9th Cir. 1985)). "The Act contemplates that the current dollar amount of post-injury 'wage-earning capacity' be adjusted downward (*i.e.*, backward in time) to account for post-injury inflation and general wage increases. This adjustment allows post-injury 'wage-earning capacity' to be meaningfully compared to pre-injury 'average weekly wages.'" *Sestich v. Long Beach Container Terminal*, 289 F.3d 1157, 1161 (9th Cir. 2002); *see also Long*, 767 F.2d at 1582 ("A general increase in wages . . . may make post-

injury earnings an unreliable indicator of wage-earning capacity.").

Under the LHWCA, general wage increases include "percentage increase[s] . . . in the contractual wages of the base hourly rate." *Hanson v. Port of Portland*, BRB Nos. 98-1454 and 98-1454A, 1999 WL 35135239, at \*3 (Ben. Rev. Bd. Aug. 6, 1999). Wage increases required by a union contract are treated as general wage increases. *See, e.g.*, *Randall v. Comfort Control, Inc.*, 725 F.2d 791, 797 n.10 (D.C. Cir. 1984) ("[W]ages received by a particular employee as a result of union bargaining for industry-wide pay rates are not indicative of the employee's true wage-earning capacity.").

Conversely, merit or promotion-based wage increases are factored into a claimant's wage-earning capacity under the LHWCA. *Sestich*, 289 F.3d at 1160–61; *Deweert*, 272 F.3d at 1247 & n.3. Merit-based wage increases include raises received for expanding one's duties or learning new skills. *Deweert*, 272 F.3d at 1247 n.3.

## III.

The only issue for decision is whether the $0.25 quarterly raises are general wage increases, which should not be factored into the determination of Petitt's wage-earning capacity, or instead reflect an increase in earning capacity, properly reducing the partial disability benefit.[1] In finding

---

[1] On January 20, 2008, K&K gave Petitt a $0.55 per hour merit increase. The parties agree that the ALJ properly increased Petitt's wage-earning capacity to account for this increase. Nor do the parties dispute that the

the latter, the ALJ relied primarily on the testimony of Karla Kaudel, the chief executive officer of K&K. Kaudel labeled the quarterly pay increases a "seniority raise," and testified:

> If people work for us, we promise them a certain maximum wage that they can achieve in a certain time frame for us. And the cap wage for everybody in production and clerical is $13.50. And when our employees start, they start at minimum wage, and with adequate performance they will get automatic raises of 25 cents per quarter.

This Court has not previously had occasion to consider the appropriate treatment under the LHWCA of such "seniority raises." We conclude that Petitt's quarterly raises are more akin to a general wage increase than to a merits-based raise in wages, and therefore should not be calculated into his wage-earning capacity.

In *Randall*, the District of Columbia Circuit noted that increases in the collectively bargained union rate for a particular employee's work do not reflect increased earning capacity under the LHWCA, because the increases simply represent industry-wide pay rates, rather than an increase in individual skill or responsibility. 725 F.2d at 797 n.10. Although K&K is not a union employer, its quarterly increases are also untethered from advancement in skill or responsibility. Like a union contract increase, which *Randall* characterized as "not indicative of the employee's true wage-earning capacity," *id.*, the K&K seniority increases do not

---

ALJ appropriately adjusted for inflation in determining Petitt's wage-earning capacity.

increase Petitt's value on the open market. Indeed, the record is clear that newer K&K employees performing precisely the same tasks as Petitt—with the same amount of proficiency— receive K&K's starting wage, adjusted upward from the time of their hire, and thus earn less than Petitt.

*Deweert*, upon which Sause relies, is not to the contrary. Although we stated in *Deweert* that wage increases because of seniority may be factored into a claimant's wage-earning capacity, the claimant's seniority in that case was paired with increased responsibility and new marketable skills. 272 F.3d at 1247 n.3. Here, Petitt's seniority is not accompanied by any increase in his productivity, skill, or responsibility that would make him more valuable on the market if he left K&K. Petitt testified without contradiction that after "your second or third month" as an electronics assembler, "you're pretty much as fast as you're going to get," and will have "learn[ed] what you need to learn until you get to another part of the company." And when asked whether he was more productive than he was three months after he started, Petitt replied "no." Again, the ALJ heard no evidence to the contrary.

This is not to suggest that K&K's seniority increases are not a rational market strategy or of real benefit to the employer. By regularly increasing Petitt's wages, K&K seeks to avoid the costs, direct and otherwise, associated with hiring or training a new employee, even at lower wages. But our objective here is not to determine whether K&K benefits from the wage increases, but rather to ascertain the wage that Petitt could receive on the open market under normal employment conditions. *Id.* at 1248. Because Petitt has learned no new skills and taken on no additional responsibility, his increased length of service makes him more valuable only to K&K. Were he to seek work on the

open market, he could start at minimum wage, just as he and all new employees did at K&K.

## IV.

For the reasons above, we hold that under the LHWCA, scheduled wage increases given by a non-union employer to all employees in a certain class based solely upon seniority are a general increase in wages and do not increase a claimant's wage-earning capacity. The petition for review is granted and the Board's decision is vacated. The matter is remanded to the agency to recalculate Petitt's partial disability benefits in a manner consistent with this opinion.

**PETITION GRANTED; VACATED AND REMANDED.**